LOUIS R. MILLER, State Bar No. 54141
smiller@millerbarondess.com
DANIEL S. MILLER, State Bar No. 218214
dmiller@millerbarondess.com
BRIAN PROCEL, State Bar No. 218657
bprocel@millerbarondess.com
**MILLER BARONDESS, LLP**
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 552-4400
Facsimile:    (310) 552-8400

Attorneys for Plaintiff
SCC ALAMEDA POINT, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SCC ALAMEDA POINT, LLC, a limited liability company,<br><br>              Plaintiff,<br><br>v.<br><br>CITY OF ALAMEDA, a municipal corporation; ALAMEDA REUSE AND REDEVELOPMENT AUTHORITY, a Joint Powers Authority; COMMUNITY IMPROVEMENT COMMISSION OF THE CITY OF ALAMEDA, a public body corporate and politic; ANN MARIE GALLANT, an individual; and DOES 1 through 10, inclusive,<br><br>              Defendants. | CASE NO. 3:10-cv-05178-CRB<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST DEFENDANTS FOR SPOLIATION OF EVIDENCE**<br><br>[Declarations of Pat Keliher, Louis R. Miller and Daniel S. Miller; and [Proposed] Order filed concurrently herewith]<br><br>Date:    April 8, 2011<br><br>Time:    10:00 a.m.<br><br>Place:   Courtroom 8, 19th Floor<br><br>Judge:   Honorable Charles R. Breyer |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

2        **PLEASE TAKE NOTICE** that on April 8, 2011, at 10:00 a.m. in Department 8 of the

3   United States District Court for the Northern District of California, located at 450 Golden Gate

4   Avenue San Francisco, California, Plaintiff SCC Alameda Point, LLC ("SCC Alameda" or

5   "Plaintiff") brings this Motion for Sanctions against Defendants City of Alameda (the "City"), the

6   Alameda Reuse and Redevelopment Authority ("Redevelopment Authority"), the Community

7   Improvement Commission of the City of Alameda ("Improvement Commission") and Ann Marie

8   Gallant ("Gallant," and collectively with the City, the Redevelopment Authority, and the

9   Improvement Commission, "Defendants").

10        California Government Code section 34090 requires that city records be maintained for at

11   least two years.  Defendants have been destroying emails every 30 days in violation of the

12   Government Code.  Despite city policy, Defendants also failed to save hard copies of these emails

13   related to a multi-million dollar real estate development project; and Defendants failed to preserve

14   emails despite knowledge of impending litigation.

15        As a result, SCC Alameda seeks terminating sanctions, evidentiary/issue sanctions and

16   monetary sanctions in the sum of one million dollars.

17        This Motion is based on this Notice; the Memorandum of Points and Authorities; the

18   Declarations of Pat Keliher, Louis R. Miller and Daniel S. Miller and the Exhibits attached thereto;

19   all matters of which this Court may take judicial notice; the pleadings and other papers on file in this

20   action; and such further evidence and argument as may be presented at the hearing on this matter.

21                       Respectfully submitted,

22   DATED:  March 1, 2011         MILLER BARONDESS, LLP

23

24                    By: _____

25                      Louis R. Miller
                   Attorneys for Plaintiff

26                      SCC ALAMEDA POINT, LLC

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400    FAX (310) 552-8400

## **SUMMARY OF ARGUMENT**

This motion seeks relief in connection with the City of Alameda (the "City") and Interim City Manager Ann Marie Gallant's ("Gallant") concerted effort to destroy evidence relating to this case. During the relevant period, the City had a policy of deleting emails after 30 days. Because the City automatically destroyed its emails, City officials were responsible for printing and retaining substantive emails in hard copy format to the extent required by law. Indeed, California Government Code section 34090 requires government agencies—including all government officials—to retain public records *for at least two years*.

Gallant and other City officials knowingly violated this statute—they permitted public records to be destroyed every 30 days and did not retain hard copies thereof. In other words, Gallant and the City destroyed practically every email sent before June 2010, including emails going back almost two years that are critical to the issues being litigated in this case. Their actions violated not only section 34090 of the Government Code, but also their obligation to preserve evidence in connection with imminent litigation. Plaintiff's ability to litigate this action has been substantially impaired. This is classic spoliation of evidence.

This lawsuit involves constitutional, contractual and fraud claims based on the actions of Gallant and other City officials who sought to oust Plaintiff SCC Alameda Point LLC ("Plaintiff"), the developer of a multi-hundred million dollar real estate project ("Alameda Point"). After removing Plaintiff from Alameda Point, Gallant's plan was to take over Alameda Point as a "public" development and thereby perpetuate herself and her cohorts in office. Gallant's surreptitious plan nearly succeeded.

Starting in 2007, Plaintiff spent considerable time and incurred over $17 million in pre-development costs in connection with the Exclusive Good Faith Negotiation Agreement ("ENA") with the City concerning Alameda Point. Plaintiff diligently pursued entitlements for Alameda Point, which was to result in a 918 acre multi-unit residential, retail and commercial development adjacent to San Francisco Bay. Plaintiff spent more than $17 million during the planning and entitlement stages of this project. That time and money was all for naught. Gallant and her cohorts

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

at the City—including Gallant's Deputy City Manager Jennifer Ott—had no intention of approving the entitlements and permitting Plaintiff to stay on as the developer of Alameda Point.

During the relevant period, Gallant reassured Plaintiff that everything was "on track," despite creating numerous obstacles. She repeatedly encouraged Plaintiff to continue developing the Project. At the same time, though, Gallant was secretly attempting to build support to remove Plaintiff from the Project and have the City take it over as a "public" project with Gallant in charge. Gallant misrepresented her support for Plaintiff in order to ensure that Plaintiff pushed ahead in developing the plans that she ultimately would usurp for the benefit of her "public" project.

In July 2010, the City prematurely and precipitously ousted Plaintiff as developer of Alameda Point, months before the environmental process had been completed and before the entitlement applications and plans were anywhere close to finalized. Within a month, Gallant's secret plan was out in the open and in full swing: The City was in the process of converting Plaintiff's work product for its own use—during a presentation by the City at The Association of Defense Communities Annual Conference in August 2010, the City took credit for Plaintiff's plans and concepts, and used Plaintiff's documents, as if they were its own (in fact, the City presented the same transportation strategy which it had criticized and relied on in ousting Plaintiff).

The decision of Gallant and other City officials to destroy their emails is especially disturbing in light of their actions in this case. On July 12, 2010, Plaintiff served Defendants with a Public Records Act request seeking the production of all emails and other communications relating to Alameda Point. [1] Mayor Beverly Johnson failed to produce a single email. Defendants produced only one email sent by Council Member Doug DeHaan and only five by Council Member Frank Matarrese *for a period of three years*; the emails sent by Johnson, DeHaan and Matarrese are critical since they were the Council Members who voted against Plaintiff's entitlement application.

---

[1] When it became clear that Defendants had no intention of complying with their obligations under the Public Records Act, Plaintiff filed suit seeking a writ of mandate. That action is currently pending in the Superior Court for the County of Alameda with a hearing on the Writ set for April 22, 2011 (Case No. RG 10537988). Plaintiff's Petition for Writ of Mandate is attached hereto as Exhibit A to the Declaration of Daniel S. Miller ("Miller Decl.").

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

Shockingly, no emails whatsoever were produced from Gallant's email account prior to June 2010, the critical period leading up to the July 2010 ouster of Plaintiff. And Gallant's cohort, Jennifer Ott, failed and refused to produce any emails from her inbox. The few emails produced regarding Gallant and Ott addressed administrative and scheduling—rather than substantive— matters.

Defendants' decision to delete their emails constitutes spoliation under the law. They not only violated the requirements of Government Code section 34090, but also the requirement that documents be maintained if there is the "potential for litigation." Defendants cannot credibly argue that they were unaware of the potential for litigation prior to July 2010. In February 2010, Gallant caused the City to send Plaintiff a default notice under the parties' agreement. The "Default Notice" stated, "If [SCC Alameda] does not cure this default within thirty days, Alameda will have the right to terminate the [Agreement]." Notwithstanding the City's threat to terminate an agreement relating to a multi-hundred million dollar real estate project, Gallant and other City officials continued to destroy their emails, ensuring that the written record of their communications would never see the light of day.

The City's misconduct is even more egregious in light of its purported excuse for failing to retain relevant documents. According to Defendants, the City does not have sufficient funds to store emails for more than 30 days. There is no evidence, though, Defendants even attempted to determine the cost associated with storing emails in compliance with the Government Code. Regardless, that excuse will not work. It is simply unacceptable for a government entity to unilaterally decide to *disregard the law* based on alleged budgetary considerations. The Government Code is not a "suggested" practice.

At the end of the day, Defendants knowingly destroyed critical evidence relating to the Alameda Point project, and they continued to do so when it became apparent that this case was destined for litigation. Additionally, Defendants went to great lengths to conceal the City's email retention policy, which they refused to disclose for several months despite repeated requests from Plaintiff's counsel. Defendants' conduct was neither innocent nor inadvertent but, rather, intentional and purposeful; and it has caused irreparable harm and prejudice to Plaintiff in this lawsuit.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1       The prejudice as to Plaintiff's ability to prove up its case and to cross-examine and impeach

2   Gallant and her cohorts is readily apparent.  Plaintiff has brought a claim for fraud against Gallant,

3   which requires Plaintiff to prove that Gallant made misrepresentations and acted with fraudulent

4   intent.  Plaintiff's ability to prove those elements has been substantially impaired because the

5   relevant communications no longer exist.

6       Plaintiff cannot conduct discovery about or introduce evidence of Gallant's emails, yet she

7   testified the emails constitute approximately twenty-five percent of her communications.  Plaintiff is

8   effectively foreclosed from establishing Gallant's actions and intent during the critical period leading

9   up to the ouster of Plaintiff.  The emails from Gallant to other Council Members or to third parties

10  regarding her "secret plan" have been destroyed.  And Plaintiff's ability to demonstrate that the City

11  failed to negotiate in good faith under the ENA—as legally required—has been prejudiced by the

12  destruction of emails sent or received prior to July 2010.  The spoliation of evidence in this case is

13  across-the-board regarding the Alameda Point project.

14      Defendants belatedly acknowledged their wrongdoing.  In December 2010, the individuals

15  most responsible for the Alameda Point project—Gallant and City Attorney Teresa Highsmith—

16  were placed on administrative leave.  The City subsequently determined not to renew Gallant's

17  contract for another term; and Highsmith accepted a position in another city.  But the damage has

18  been done.

19      The relief sought by this motion is the minimum necessary to level the playing field:  an

20  order reinstating and enforcing the terms of the Exclusive Good Faith Negotiation contract, plus an

21  award of monetary sanctions against Gallant and the City in the sum of one million dollars for

22  blatant and egregious spoliation of evidence and for the expense incurred herein.

### ISSUES TO BE DECIDED

24      Pursuant to Local Rule 7-4, the issues to be decided by this motion are:

25      1.      Did Defendants violate California Government Code section 34090 which requires

26  that government records be maintained for at least two years?

27      2.      Did Defendants fail to change their policy of automatically deleting emails after 30

28  days despite notice of impending litigation?

3.      Did Defendants fail to preserve hard copies of emails despite notice of impending litigation?

4.      What sanctions are warranted for Defendants' spoliation of evidence?

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SANCTIONS, CASE NO. 3:10-cv-05178-CRB

77569.10

# **TABLE OF CONTENTS**

I.    FACTS ........................................................................................................1

    A.    The Project ...........................................................................................1

    B.    The Agreement .....................................................................................2

    C.    The Process Is Corrupted—Ann Marie Gallant .....................................2

    D.    Violation Of Government Code Section 34090 .......................................3

        1.    Automatic Deletion of Emails after 30 Days .............................3

        2.    Destruction of Emails by Gallant and Other City Officials .........................4

    E.    Defendants Continue To Destroy Documents Knowing That Litigation Is Likely .................................................................................................5

    F.    The City Misrepresented Its Email Retention Policy ..............................7

    G.    This Lawsuit .........................................................................................8

    H.    The Fallout ..........................................................................................8

II.    ARGUMENT ............................................................................................9

    A.    Defendants Had A Legal Duty To Maintain Records .............................10

    B.    Defendants Violated Their Duty To Preserve Emails Despite Impending Litigation ...........................................................................................11

    C.    Defendants Engaged In Spoliation By Permitting Emails To Be Destroyed .........13

    D.    Sanctions Are Warranted ....................................................................13

        1.    Terminating/Evidentiary Sanctions ..........................................15

        2.    Monetary Sanctions ................................................................15

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**TABLE OF AUTHORITIES**

**Cases**

*Akiona v. United States*, 938 F.2d 158 (9th Cir. 1991) ........................................................... 14

*Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93 (2d Cir. 2001) ...................................... 10, 14

*Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162 (S.D.N.Y. 2004) ............................... 13

*Doe v. Norwalk Cmty. Coll.*, 248 F.R.D. 372 (D. Conn. 2007) .................................................... 12, 14

*Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*,
   C 06-3359 JF (RS), 2008 WL 4298331 (N.D. Cal. Sept. 19, 2008) (Seeborg, Magis J.,) ............. 11

*Favors v. Fisher*, 13 F.3d 1235 (8th Cir. 1994) ........................................................................ 10

*Glover v. BIC Corp.*, 6 F.3d 1318 (9th Cir. 1993) ..................................................................... 9, 13

*Hicks v. Gates Rubber Co.*, 833 F.2d 1406 (10th Cir. 1987) ....................................................... 10

*In re Napster Copyright Litigation*, 462 F. Supp. 2d 1060 (N.D. Cal. 2006) .................. 10, 12, 13, 15

*Leon v. IDX Sys. Corp.*, 464 F.3d 951 (9th Cir. 2006) ............................................................... 9, 14

*Lewis v. Ryan,* 261 F.R.D. 513 (S.D. Cal. 2009) ...................................................................... 11

*Oto Software, Inc. v. Highwall Technologies, LLC*,
   08-CV-01897-PAB-CBS, 2010 WL 3842434 (D. Colo. Aug. 6, 2010) .................................... 12

*People v. Memro*, 11 Cal. 4th 786 (1995) ................................................................................ 3

*People v. Zamora*, 28 Cal. 3d 88 (1980) ................................................................................. 10, 11

*Qualcomm Incorporated v. Broadcom Corporation* 2008 WL 66932 (2008) ................................. 15

*Realnetworks, Inc. v. DVD Copy Control Ass'n*, 264 F.R.D. 517 (N.D. Cal. 2009) .............. 11-12, 14

*Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002) ............... 11-12

*Silvestri v. Gen. Motors Corp.*, 271 F.3d 583 (4th Cir. 2001) .................................................... 9

*Sinai Medical Center v. Super. Ct.*, 18 Cal. 4th 1 (1998) .......................................................... 9

*Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68 (S.D.N.Y. 1991) ......................................... 13

*United States v. Kitsap Physicians Serv.*, 314 F.3d 995 (9th Cir. 2002) ...................................... 14

*West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776 (2d Cir. 1999) ............................................ 9

*West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776 (2nd Cir. 1999) ........................................... 14

*William T. Thompson Co. v. Gen. Nutrition Corp.*, 593 F. Supp. 1443 (C.D. Cal. 1984) ................. 13

*Wm. T. Thompson Co. v. Gen. Nutrition Corp., Inc.*, 593 F. Supp. 1443 (C.D. Cal. 1984) ............. 15

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

*Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003)............................................... 12, 13

**Statutes**

California Government Code section 34090........................................................................... 3, 10, 11

**Other Authorities**

Black's Law Dictionary 1401 (6th ed.1990)...................................................................................... 9

**Rules**

29 C.F.R. § 1602.14 ..................................................................................................................... 10

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

77569.10

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   **FACTS**[2]

A.   **The Project**

The Alameda Point project is a master-planned development consisting of 918 acres of prime water-front land on the east side of the San Francisco Bay with views of the Golden Gate Bridge and the downtown San Francisco skyline.  Alameda Point is owned by the United States Department of the Navy, with the City exercising land use control.  The land formerly housed the Alameda Naval Air Station.

The Naval Air Station was decommissioned in 1997, and the City has been trying to redevelop the property since that time.  The property is one of the last remaining opportunities for a large-scale mixed use development in the Bay Area.

This is a complex development project, with extensive environmental and other development issues.  The Naval Air Station was listed as a Superfund cleanup site in 1999.  The property has soil and groundwater contamination, including two landfills that require remediation.  A large portion of Alameda Point sits just above the water level, so hydrological analysis and accommodation must be done to avoid flooding.  Portions of the property have been designated as a historic district determined eligible for listing on the National Register of Historic Places.  There are also geotechnical and traffic issues, and a myriad of other development issues.

SCC Alameda was chosen on May 8, 2007 as the master developer of Alameda Point; it is a highly experienced developer and has successfully completed other large-scale projects in the Bay Area and throughout California.  In master-planned developments, it is customary for the developer and City to enter into an agreement to negotiate exclusively and in good faith to completion of the entitlement process; such developments require millions of dollars of costs, countless hours and years of planning before entitlements are approved and a development agreement can be finalized.

_____

[2] The facts regarding the project are taken from the Second Amended Complaint, Miller Decl.¶ 3 & Exh. B.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

Good faith negotiation contracts are critical in this industry and are legally enforceable under California law.

**B.      The Agreement**

In July 2007, SCC Alameda entered into an Exclusive Negotiation Agreement (ENA) with the City of Alameda, the Alameda Reuse and Redevelopment Authority, and the Community Improvement Commission of the City of Alameda.  The ENA with amendments is attached to the Second Amended Complaint.  Gallant was the Interim City Manager of Alameda from April 2009 until December 2010.

Under the ENA, Defendants must cooperate, negotiate in good faith and negotiate exclusively with SCC Alameda concerning the project.  A good faith requirement was of paramount importance to SCC Alameda because it was agreeing to expend millions of dollars and thousands of hours of time in pursuit of entitlements for and development of the project.

Between July 2007 and July 2010, SCC Alameda invested in excess of $17 million in Alameda Point in reliance on Defendants' promise to act in good faith, cooperate and be commercially reasonable in negotiating to completion of the entitlement process.

**C.      The Process Is Corrupted—Ann Marie Gallant**

On April 1, 2009, the City hired Gallant as its Interim City Manager.  The City of Alameda's website defines the role of the City Manager as follows: "As chief executive officer, the City Manager provides the leadership and direction for the operation and management of all City departments." Miller Decl. ¶ 4 & Exh. C.  While giving lip service and pretending to cooperate, Gallant covertly did everything she could to derail SCC Alameda's project.  For instance, she changed course on the previously negotiated and agreed project financial pro forma; and she stalled SCC Alameda's attempts to finalize the pro forma.

In November 2009, Gallant was heard to say that she had a "secret plan" that did not involve SCC Alameda as the developer of the project.  In retrospect, it appears that Gallant's plan was referenced on Blogging Bayport Alameda on November 3, 2009: "According to folks who attended a recent Chamber of Commerce breakfast, Interim City Manager, Ann Marie Gallant, mentioned that

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

2

1  the City has a secret contingency plan for Alameda Point." Miller Decl. ¶ 5 & Exh. D. But Plaintiff

2  did not know about it at the time and continued on in good faith.

3      SCC Alameda put millions of dollars into Alameda Point to, among other things, pay City

4  salaries (including Gallant's) and outside consultants associated with the project. Gallant

5  encouraged SCC Alameda to continue funding the project and work thereon knowing that all of the

6  money/work done by SCC Alameda would be appropriated in pursuit of Gallant's "secret plan."

7      Gallant and others at the City breached the agreement to negotiate in good faith and carried

8  out a scheme to oust SCC Alameda from the project. This took place between April 1, 2009 and

9  culminated with the City's ouster of SCC Alameda on July 20, 2010. The City's ouster was

10  premature and a rush to judgment, in derogation of the ENA and the Contract Clause of the U.S.

11  Constitution.

12  **D.      Violation Of Government Code Section 34090**

13      **1.      Automatic Deletion of Emails after 30 Days**

14      California Government Code section 34090 requires that city records be maintained for at

15  least two years and allows the destruction of those records with legislative approval and written

16  permission of the city attorney only after that time has passed. Gov't Code § 34090; *see People v.*

17  *Memro*, 11 Cal. 4th 786, 829 (1995). In the PRA lawsuit, SCC Alameda sent an interrogatory to the

18  City of Alameda: "State whether YOU permanently delete emails after 60 days." The City

19  responded, "Except for emails printed on paper or saved in another form or another manner by

20  individual email users and emails subject to a litigation hold, yes." Miller Decl. ¶ 6 & Exh. E.

21      But as later discovered, the City's email retention policy is 30 days, not 60. As City Clerk

22  Laura Weiseger testified:

23      Q:      After 30 days, is there, like, an automatic delete built into your

24              email system at the City?

25      A:      Yes.

26      . . .

27      A:      ... Even if [the emails] are in your inbox or outbox or trash or

28              whatever, after 30 days it gets cleared out by date.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    Q:    That's just an automatic feature of the City of Alameda's e-

2    mail electronic system?

3    A:    Yes.

4  (City Clerk Depo. at 55:18-56:6 attached hereto to the Miller Decl. ¶ 7 & Exh. F.)

5       Each City Official is responsible for maintaining paper copies of emails:

6    Q:    Who decides if an email is printed out in paper form and

7    maintained?  How is that process determined?

8    A:    The individual who receives the email would make that

9    decision.

10    Q:    So if an email came to a particular City official, it would be up

11    to that particular individual to decide whether to print it out and keep it

12    or not; correct?

13    A:    Correct

14  (City Clerk Depo. at 29:20 – 30:4.)

15       **2.    Destruction of Emails by Gallant and Other City Officials**

16       The perpetrator of the scheme to oust SCC Alameda from the project—Gallant—destroyed

17  her emails.  Gallant acknowledged that her emails from April 2009 to July 2010 were destroyed; she

18  testified she knows of no other source to obtain copies of these emails.  (Gallant Tr. at 51:12-53:9,

19  attached to the Miller Decl. ¶ 8 & Exh. G.)  Gallant was aware of the automatic deletion after 30

20  days (Gallant Tr. at 56:15-25), yet made no effort to retain copies or change the policy despite

21  knowing that litigation with SCC Alameda was likely.  (Gallant Tr. at 71:4-10.)

22       Each individual employee is responsible for deciding whether to print out electronic

23  documents—including emails—and to retain them in hard copy form.  (City Clerk Depo. at 29:20-

24  24.)  Gallant testified that approximately twenty-five percent of her communications were by email.

25  (Gallant Tr. at 18:19-19:10 & 21:23-25.)  Gallant kept hard copies of other emails unrelated to the

26  Project (Gallant Tr. at 60:10-61:21), *but she did not print paper copies of substantive emails related*

27  *to Alameda Point* (Gallant Tr. at 61:22-63:18 & 84:11-91:15).

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    In fact, the City Clerk testified that Gallant's decision—not to print an email—amounts to a

2  violation of California's Government Code:

3        Q:      Will you agree that the City's electronic mail, email destruction

4                policy, 30 days on your computer and, I guess 60 days on the backup

5                computers at the city, is in violation, is contrary to the two-year

6                retention policy in Government Code 34090, subsection d?

7        A:      No.

8        Q:      And why not?

9        A:      Because the paper version is maintained

10       Q:      Okay.  And if the person doesn't maintain the paper version of

11               the email, then will you agree that we a have a pretty clear-cut

12               violation of 34090?

13       A:      Yes.

14  (City Clerk Depo. at 92:2 - 93:5.)

15       At the behest of Gallant, Deputy City Manager Jennifer Ott conspired with Gallant to oust

16  SCC Alameda from the Project (see Second Amended Complaint, ¶¶ 57-59), and it appears Ms. Ott

17  successfully covered her tracks as well.  Ms. Ott testified that she does not remember whether she

18  received any instruction regarding retaining documents in hard copy form.  (Ott Tr. at 16:19-24,

19  attached to the Miller Decl. ¶ 9 & Exh. H.)

20       Mayor Beverly Johnson did not produce any documents in response to the PRA Request.

21  (Johnson Tr. at 27:13-17, attached to the Miller Decl. ¶ 10 & Exh. I.)  In contrast, City Engineer

22  Matthew Naclerio utilizes an archive system, whereby all of his emails for the last five years have

23  been stored and retained.  (Naclerio Tr. at 10:21-12:3, attached to the Miller Decl. ¶ 11 & Exh. J.)

24  Thus, three critical witnesses in this case—Ott, Gallant and Johnson—opted not to use the archive

25  system, but rather to permit their emails to be deleted permanently after 30 days.

26       **E.      Defendants Continue To Destroy Documents Knowing That Litigation Is Likely**

27       On *February 4, 2010*, Gallant sent a letter to SCC Alameda indicating that SCC Alameda

28  was in default under the Agreement.  See Declaration of Pat Keliher ("Keliher Decl.") ¶ 2 & Exh. A.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

The letter stated, "Alameda hereby provides notice that [SCC Alameda] has defaulted under the [Agreement] for failure to achieve a Mandatory Milestone by the applicable date set forth in the Mandatory Milestone Schedule of Performance."  The six-page letter spells out Defendants' justification for the alleged default and concludes, "If [SCC Alameda] does not cure this default within thirty days, Alameda will have the right to terminate the [Agreement]."

On February 8, 2010, SCC Alameda sent a response to the Mayor and Council Members indicating SCC Alameda's disagreement with the default notice:

> The notice is littered with inaccurate and misleading statements.  Moreover, the legal argument for determining the default is specious and relies on alleged requirements that simply do not exist in the [Agreement]… Moreover, we were even more surprised and disturbed to see that these specious legal claims used to determine the non-existent default were the subject of a City-issued press release...  Unfortunately, the use of City press releases for damaging unsubstantiated claims is becoming a major distraction and obstacle to the success of our mutual Alameda Point effort.  We respectfully request that you withdraw this notice of default and that we work collaboratively on a plan that is best for the City of Alameda.

See Exhibit B to Keliher Decl. ¶ 3.

On July 12, 2010, SCC Alameda's counsel sent a letter to Defendants asserting its position that the Agreement had not expired and stating, "Any determination not to extend the [Agreement] would be an unlawful violation of the rights of SCC Alameda.  Our client reserves all of its rights and remedies herein against the City and all responsible parties."  Miller Decl. ¶ 12 & Exh. K.

SCC Alameda served its PRA request on July 12, 2010, which stated, "We request that you preserve intact all documents and computer communications and attachments thereto, including but not limited to all *emails and computer files*, wherever originated, received or copied, including archives thereof preserved on tape, hard drive, disc, or any other archival medium, and including also any printouts, blowbacks or other reproduction of any such computer communications" (emphasis added).  Miller Decl. ¶ 13 & Exh. L.  The July 12, 2010 letters were sent to Gallant, Mayor Johnson, the City Council members and City Attorney Highsmith.

On July 20, 2010, SCC Alameda's litigation counsel spoke at the City Council meeting before the vote took place and conveyed the message that, "SCC Alameda will be in court to enforce its rights under the Agreement seeking very substantial damages, if necessary…"  Miller Decl. ¶ 14

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

& Exh. M.  SCC Alameda filed this action on August 4, 2010 and served Defendants on August 18, 2010.

There after, on October 8, 2010, *counsel for Defendants sent Plaintiff's counsel a letter stating, "[W]hen SCC Alameda served* its federal lawsuit on the City, the City took immediate steps to create a back-up of e-mails in the accounts of the City Manager, the City Council members and other employees whose accounts could potentially contain e-mails relevant to the federal lawsuit" (emphasis added).  Miller Decl. ¶ 15 & Exh. N.  Thus, Defendants did not start preserving emails until *after* they were *served* with this lawsuit on *August 18, 2010*.

### F.      The City Misrepresented Its Email Retention Policy

The parties exchanged a series of emails wherein Plaintiff attempted to obtain information regarding Respondents' email retention policies.  Plaintiff's counsel sent a letter to City Attorney Highsmith dated August 26, 2010, in which he stated: "[W]e have learned that Defendants and/or its employees have a practice of deleting emails every few weeks."  Counsel further stated that it would be unlawful to automatically delete emails because this lawsuit had been filed August 14, 2010 and was pending against Defendants.  (Miller Decl. ¶ 16 & Exh. O.)

In a letter dated September 2, 2010, Senior Assistant City Attorney Donna Mooney stated that Defendants had compiled documents that are responsive to Plaintiff's PRA Request and assured that "[n]one of these documents will be deleted or destroyed."  (Letter from Donna Mooney to Brian Procel dated September 2, 2010, attached to the Miller Decl. ¶ 17 & Exh. P.)  Ms. Mooney did not comment on Defendants' email retention policy, nor did she deny that Defendants were automatically deleting emails.  (*Id.*)  Looking back, she appears to have been purposely evasive.

After several failed attempts to reach Defendants by telephone, Plaintiff sent a letter dated September 15, 2010, again requesting that Ms. Highsmith set forth Defendants' email retention policy.  (Miller Decl. ¶ 18 & Exh. Q.)  The letter stated that it was improper for the City to conceal that information.

Ms. Highsmith sent another letter to Plaintiff on September 16, 2010.  (Miller Decl. ¶ 19 & Exh. R.)  She reiterated Defendants' position that no responsive documents were being deleted or

1    destroyed.  (*Id.*)  In that letter, Ms. Highsmith refused to set forth Defendants' policy regarding the

2    retention and production of emails—more dissembling and evasion.

3            On October 8, 2010, outside counsel for Defendants David Newdorf finally admitted—three

4    months after Plaintiff sent the PRA Request—that Defendants automatically *delete* emails after 60

5    days.  (Miller Decl. ¶ 15 & Exh. N.)  The City Clerk later clarified that the deletion practice was 30

6    days.

7            **G.        This Lawsuit**

8            The central basis of SCC Alameda's lawsuit is that Gallant, Ott and other City officials

9    conspired to violate the Agreement and oust SCC Alameda from the Project.  See SAC attached to

10   Miller Decl. ¶ 3 & Exh. B.  The emails evidencing the conspiracy—emails by City officials from

11   April 2009 to July 2010—have been destroyed.  Gallant et al. have covered their tracks and

12   prevented SCC Alameda from obtaining evidence critical to its claims.

13           In its lawsuit, SCC Alameda alleges that Gallant and others conspired to oust SCC Alameda

14   from the Project so they could take it over and enrich themselves:

15           The motive of the Interim City Manager, previously concealed, has now been
        exposed:  She and others want to oust SCC Alameda as the developer, make the
16      project a "public" development and effectively take it over.  She, and others, are
        seeking to put themselves in charge of a complex multi-year, multi-million dollar
17      project, despite having no development experience or expertise, so they can
        perpetuate themselves in public office and receive remuneration for "services
18      rendered" indefinitely.

19   See SAC ¶ 9.

20           SCC Alameda is suing Gallant for actual fraud and corruption.  SCC Alameda needs emails

21   by Gallant and the others to prove the City's wrongdoing and Gallant's corrupt motive:

22           Unbeknownst to SCC Alameda, the City Council vote on July 20, 2010 was a set-
        up; the scheme to deny the project was put in place months before by Gallant; and
23      the vote was the culmination of that scheme.   Gallant's corrupt self-serving
        motivation was to entrench herself as head of a public agency in charge of the
24      multi-year complex project.

25   See SAC ¶ 134.

26           **H.        The Fallout**

27           At her deposition on November 12, 2010, Gallant blamed City Attorney Teresa Highsmith

28   for the City's failure to comply with the Government Code.  (Gallant Tr. at 57:2-58:19, attached to

**MILLER BARONDESS, LLP**
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL:(310) 552-4400    FAX:(310) 552-8400

8

the Miller Decl. ¶ 8 & Exh. G)  Highsmith was placed on administrative leave on December 28, 2010.  Gallant was also placed on administrative leave at that time, and the City has determined not to renew her contract as Interim City Manager.  Miller Decl. ¶ 20 & Exh. S.

SCC Alameda cannot obtain any of the destroyed emails among Gallant and other City officials from April 2009 (when Gallant was hired) through July 2010 (the critical period leading up to the City's vote to deny SCC Alameda's entitlement application).[3]

## II.   **ARGUMENT**

The Ninth Circuit recognizes that trial courts have the inherent power to impose a variety of sanctions against parties who destroy or fail to preserve evidence.  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (affirming district court's use of inherent powers to grant monetary and terminating sanctions for spoliation of evidence).  The Court has discretion to draw an adverse inference from a party's failure to present evidence.  *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).  While a finding of bad faith suffices to permit such an inference, it is not always necessary.  *Id.*

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (citing Black's Law Dictionary 1401 (6th ed.1990)).  "Perjury, like spoliation, undermines the search for truth and fairness by creating a false picture of the evidence before the trier of fact.  Perjury does so by creating false evidence; spoliation does so by destroying authentic evidence."  *Sinai Medical Center v. Super. Ct.*, 18 Cal. 4th 1, 9 (1998).

---

[3] In the PRA action, the City produced approximately 27,000 pages of documents, including some emails and the remainder consisting of documents publicly available on-line and project-related documents from the Plaintiff to the City that the Plaintiff itself sent and thus already has in its possession.  The emails produced appear to have come from the accounts of the City Clerk, who was not involved in the project, and a lower-level City employee, Matt Naclerio, who is not alleged to be part of the Gallant/Ott et al. conspiracy.  Not a single email was produced from the accounts of Gallant and Ott, and none of any substance was produced from the accounts of the Councilmembers who voted to oust Plaintiff—Johnson, DeHaan and Matarrese.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SANCTIONS, CASE NO. 3:10-cv-05178-CRB
77569.10

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL:(310) 552-4400    FAX:(310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

A.    **Defendants Had A Legal Duty To Maintain Records**

"The district courts' inherent power to sanction may be invoked in response to destruction of evidence. If a party breaches its duty to preserve evidence, the opposing party may move the court to sanction the party destroying evidence." *In re Napster Copyright Litigation*, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006). "[D]estruction of evidence in violation of a regulation that requires its retention can give rise to an inference of spoliation." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 108-09 (2d Cir. 2001) (awarding spoliation inference to plaintiff). In *Brynie*, the plaintiff sought an adverse evidentiary inference against the local school district and education board, claiming they destroyed documents relating to a decision not to hire him. *Id.* at 98, 107. The Second Circuit found that *plaintiff was entitled to a presumption of spoliation because the defendant's destruction of hiring documents violated the 2-year mandatory document retention policy* prescribed by the Code of Federal Regulations:

> [I]n the end, it does not matter when the documents were destroyed since . . . Cromwell was still required by federal regulations implementing Title VII and the Americans with Disabilities Act to retain all records pertaining to employment decisions for a period of two years. *See* 29 C.F.R. § 1602.40.

*Brynie*, 243 F.3d at 108. The Court of Appeals awarded plaintiff the requested evidentiary sanction.

Other federal courts similarly have recognized that record-retention statutes and regulations establish a duty to preserve evidence. *See Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1419 (10th Cir. 1987) (defendant's failure to preserve personnel records in violation of 29 C.F.R. § 1602.14 entitled plaintiff to "the benefit of a presumption that the destroyed documents would have bolstered her case"); *Favors v. Fisher*, 13 F.3d 1235, 1239 (8th Cir. 1994) (same).

The California Supreme Court has upheld spoliation sanctions for violating a statute's record-keeping provisions, as here: *People v. Zamora*, 28 Cal. 3d 88 (1980). In *Zamora*, the California Supreme Court ruled that a criminal defendant, who stood accused of assaulting a police officer, was entitled to an evidentiary sanction against the Los Angeles Police Department for destroying citizen complaints—in violation of Section 34090—two weeks before it arrested the defendant. Sanctions were not warranted, argued the prosecution, because the Los Angeles City Council had expressly authorized (by resolution) the destruction of the public records at issue. The

10

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

California Supreme Court rejected the state's argument, explaining that the Los Angeles City

Counsel's resolution did not supersede Section 34090's two-year retention requirement:

> [T]he resolution of the council did not comply with <u>section 34090</u> since it authorized destruction of records less than two years old. The Attorney General recently observed that "if destruction is desired [under <u>Gov. Code, § 34090</u>], it may only be done in the manner provided for by the statute. The mode prescribed is the measure of the power." (57 Ops.Cal.Atty.Gen. 307, 310 (1974).) *We conclude that the People cannot justify the destruction of the records by reliance upon <u>section 34090</u> and the city council resolution.*

*Zamora,* 28 Cal. 3d at 98 (emphasis added). The California Supreme Court concluded that the trial

court's failure to impose a sanction of an adverse finding against the state constituted prejudicial

error. *Id.* at 103-04.

Here, Defendants destroyed emails that were subject to a two-year record retention statute.

The City admitted that its practice of routinely erasing emails written by its officials violates the

state's record-retention statute. Defendants' document destruction gives rise to the presumption that

the missing evidence would have proved beneficial to SCC Alameda's case.

City Officials also failed to preserve paper copies of their emails. The City Clerk testified

each City Official was responsible for maintaining hard copies of emails. City Officials including

Gallant knew the significant scope of the project and that millions of dollars were at stake. Gallant

and others also knew that negotiations had become contentious as early as 2009. Gallant authored

the February 4, 2010 default notice wherein the City threatened to terminate the Agreement. Yet

Gallant, Ott, City Attorney Highsmith and others failed to change the email retention policy and

failed to preserve hard copies of emails related to the Project.

**B.     <u>Defendants Violated Their Duty To Preserve Emails Despite Impending</u>**
        **<u>Litigation</u>**

There is a separate duty to preserve documents in anticipation of litigation. *See, e.g., Dong*

*Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.*, C 06-3359 JF (RS), 2008 WL 4298331 *3 (N.D. Cal.

Sept. 19, 2008) (Seeborg, Magis J.,).[4]  In *Realnetworks, Inc. v. DVD Copy Control Ass'n,* 264 F.R.D.

---

[4] Recent spoliation decisions handed down by California district courts rely on Second Circuit law for guidance. *Lewis v. Ryan,* 261 F.R.D. 513, 521 (S.D. Cal. 2009) (noting that California district courts follow the Second Circuit's approach in *Residential Funding Corp. v. DeGeorge Financial*

517 (N.D. Cal. 2009), the U.S. District Court for the Northern District of California reiterated the

standard (citing *Zubulake IV*) for when this duty to preserve evidence arises:

> As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action. The future litigation must be "probable," which has been held to mean "more than a possibility." The duty to preserve evidence *also* attaches when "a party should have known that the evidence may be relevant to future litigation."

*Id.*, 264 F.R.D. at 523-24 (emphasis added).

That the potential litigation is not imminent is of no consequence. *In re Napster Copyright Litigation*, 462 F. Supp. 2d at 1068 (immanency of litigation is sufficient, but not necessary, to trigger the duty to preserve evidence). Under this Court's decisions and *Zubulake IV*, demand letters and threatening/hostile letters are enough to trigger the duty to preserve evidence. *Doe v. Norwalk Cmty. Coll.*, 248 F.R.D. 372, 377 (D. Conn. 2007) (following *Zubulake IV's* formula; under the "most generous" reading of Second Circuit law, the duty to preserve arose when plaintiff's counsel sent demand letter); see also *Oto Software, Inc. v. Highwall Technologies, LLC*, 08-CV-01897-PAB-CBS, 2010 WL 3842434 *9 (D. Colo. Aug. 6, 2010) (following *Hynix's* formula; defendant's "confrontational" letter demanding payment and production of documents made it clear that litigation was "more than a possibility").

Notwithstanding the fact that Defendants had a statutory duty to preserve emails, they also "should have known that the evidence may be relevant to future litigation" and should be sanctioned for breaching their duty to preserve documents. *See Realnetworks*, 264 F.R.D. at 524. Despite the strong likelihood of litigation, Defendants continued destroying emails. Gallant is especially culpable as she was at the center of the dispute, she wrote the February 2010 default letter and it was her responsibility to maintain hard copies of her own Project-related emails.

Tellingly, Gallant maintained hard copies of emails unrelated to the Project but avoided saving Project-related emails. The inference is inescapable that she was purposely covering her tracks.

---

Corp., 306 F.3d 99, 107 (2d Cir. 2002)). And California's Northern District relies on one decision in particular—*Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003) (Scheindlin, J.,) (hereafter "*Zubulake IV*").

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

C.    **Defendants Engaged In Spoliation By Permitting Emails To Be Destroyed**

Once the duty to preserve evidence attaches, a party must "suspend any existing policies related to deleting or destroying files and preserve *all* relevant documents related to the litigation." *In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d at 1070 (citing *Zubulake IV*) (emphasis added). Under *Zubulake IV*, the duty to preserve evidence is broad:

> While a litigant is under no duty to keep or retain every document in its possession ... it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request.

*Zubulake IV*, 220 F.R.D. at 217 (citing *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991) (quoting *William T. Thompson Co. v. Gen. Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984)).

In addition, a party is not absolved of liability if it permits data to be destroyed automatically:

> [I]n the world of electronic data, the preservation obligation is not limited simply to avoiding affirmative acts of destruction. *Since computer systems generally have automatic deletion features that periodically purge electronic documents such as e-mail, it is necessary for a party facing litigation to take active steps to halt that process.*

*Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 175-76 (S.D.N.Y. 2004) (emphasis added).

Putting aside Defendants' violation of the Government Code, Defendants had an affirmative duty to change their email retention policy upon learning that litigation was likely to ensue. They failed to do so.

D.    **Sanctions Are Warranted**

Bad faith is not a prerequisite for spoliation sanctions. *Glover v. BIC Corp.*, 6 F.3d at 1329 (9th Cir. 1993) ("[s]urely a finding of bad faith will suffice, but so will simple notice of 'potential relevance to the litigation'"). Federal courts in the Ninth and Second Circuits agree that a litigant's negligent failure to preserve evidence warrants sanctions. *In re Napster Copyright Litigation*, 462 F. Supp. 2d at 1070 (*citing Zubulake IV v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("[o]nce the duty to preserve attaches, any destruction of documents is, at a minimum, negligent")).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

"A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were *potentially* relevant to the litigation before they were destroyed.'" *Leon*, 464 F.3d at 959 (emphasis in original); *see also United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002) (same); *Realnetworks*, 264 F.R.D. at 523 (same).

In the following circumstances, a party's failure to preserve evidence was sufficiently culpable to warrant sanctions:

- **Intentional Destruction:** *Byrnie*, 243 F.3d 93, 109.  Defendant admitted that it had a policy to destroy records after the hiring process was complete and that records sought by plaintiff were destroyed per the policy.  Court ruled "[t]his is evidence of intentional destruction sufficient to show a culpable state of mind."

- **Grossly Negligent Destruction:** *Doe v. Norwalk Cmty. Coll.*, 248 F.R.D. 372, 379-80 (D. Conn. 2007) (failure to take affirmative acts to stop system from routinely destroying emails and cleansing hard drives was "grossly negligent, if not reckless"; party's excuse that it had limited email storage space was insufficient to avoid sanctions).

An appropriate sanction for spoliation should be designed to: "(1) *deter parties from engaging in spoliation*; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2nd Cir. 1999) (emphasis added).

The Ninth Circuit has held that punishment/deterrence should be considered in determining evidentiary sanctions for spoliation: "The evidentiary rationale is nothing more than the common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document…. The other rationale for the inference has to do with its *prophylactic and punitive effects*.  Allowing the trier of fact to draw the inference presumably *deters parties* from destroying relevant evidence before it can be introduced at trial." *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991) (emphasis added).

Here the prejudice is severe.  And Defendants should be deterred from violating California law and destroying public records in the future.  Defendants engaged in bad faith by failing to

change the email retention policy and failing to save hard copies of emails despite knowing litigation was likely to ensue.

### 1.   <u>Terminating/Evidentiary Sanctions</u>

Defendants should be estopped from denying the enforceability of the ENA.  SCC Alameda's request for a mandatory injunction requiring Defendants to negotiate in good faith under the ENA should be granted.  Defendants cannot be permitted to act in bad faith, violate their contractual obligations, and then completely cover their tracks by destroying the evidence.  SCC Alameda should be given the benefit of its bargain which is, at the very least, good faith negotiation of the ENA.  "[A] court may dismiss the claim of the party responsible for destroying the evidence." *In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d at 1066; *see, e.g., Wm. T. Thompson Co. v. Gen. Nutrition Corp., Inc.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984) (imposing default and monetary sanctions against defendant for "knowingly and purposefully permitting its employees to destroy key documents and records").

### 2.   <u>Monetary Sanctions</u>

Monetary sanctions are also appropriate, as SCC Alameda has spent significant legal fees and resources only to learn that Defendants have destroyed the evidence necessary to prove its case.  Monetary sanctions are also justified as punishment and to deter Defendants from engaging in this type of conduct in the future.

In *Qualcomm Incorporated v. Broadcom Corporation* 2008 WL 66932 (2008), Qualcomm was ordered to pay $8,568,633.24 as sanctions, which consisted of all Broadcom's attorneys' fees, *even though Broadcom prevailed at trial* despite the spoliation of evidence.  The Court held that monetary sanctions were still appropriate because the withheld documents could have impacted the pre-trial resolution of the case and because the failure to produce these documents significantly increased the complexity and length of the litigation.  *Qualcomm* at 17.

Here, SCC Alameda is deprived of the use of emails sent by Gallant and other City officials who breached the Agreement and conspired to oust SCC Alameda from the project.  This could have impacted a resolution if SCC Alameda was able to bring Gallant's corrupt scheme to light.  The

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

destruction of evidence has also significantly increased SCC Alameda's cost of litigation (including the filing of this motion).

Monetary sanctions of one million dollars should be awarded jointly and severally against all Defendants.[5]

Respectfully submitted,

DATED:  March 1, 2011

MILLER BARONDESS, LLP

By: _____

Louis R. Miller
Attorneys for Plaintiff
SCC ALAMEDA POINT, LLC

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

---

[5] Plaintiff has incurred approximately $650,000 in legal fees/costs in this lawsuit.  Miller Decl. ¶ 21. An additional sanction of $350,000 is warranted as punishment and to deter Defendants' conduct in the future.  Plaintiff reserves the right to seek additional sanctions and if this Court finds appropriate, will supplement its request for monetary sanctions with records of its legal fees expended in this case.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SANCTIONS, CASE NO. 3:10-cv-05178-CRB
77569.10

**PROOF OF SERVICE**

STATE OF CALIFORNIA,      )
                          )   SS.
COUNTY OF LOS ANGELES     )

I am a citizen of the United States and employed in the County of Los Angeles, State of California.  I am over the age of eighteen (18) years and not a party to the within action.  I am employed by MILLER BARONDESS, LLP and my business address is 1999 Avenue of the Stars, Suite 1000, Los Angeles, California 90067.

On **March 1, 2011**, I e-filed **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST DEFENDANTS FOR SPOLIATION OF EVIDENCE** with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to those recipients.

Executed on **March 1, 2011**, at Los Angeles, California.

**Carole Conklin**                          **/s/ Carole Conklin**
Type or Print Name                          Signature