1  DAVID B. NEWDORF, State Bar No. 172960
   david@newdorf.com
2  VICKI F. VAN FLEET, State Bar No. 164598
   vicki@newdorf.com
3  NEWDORF LEGAL
4  220 Montgomery Street, Suite 1850
   San Francisco, California 94104-4238
5  Telephone:    (415) 357-1234
   Facsimile:    (866) 954-8448
6
7  [Additional Counsel on Signature Page]

8  Attorneys for Defendants
   CITY OF ALAMEDA, ALAMEDA REUSE
9  AND REDEVELOPMENT AUTHORITY, and
   COMMUNITY IMPROVEMENT COMMISSION
10 OF THE CITY OF ALAMEDA

11             **IN THE UNITED STATES DISTRICT COURT**
12         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
13

14 SCC ALAMEDA POINT, LLC, a limited         | **Case No. CV 10-5178 CRB**
   liability company,
15                                           | **CITY OF ALAMEDA'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
16                       Plaintiff,
                                             | Date:       May 4, 2012
17            vs.
                                             | Time:       10:00 a.m.
18 CITY OF ALAMEDA, a municipal corporation;
   ALAMEDA REUSE AND                         | Place:      Courtroom 8, 19th Floor
19 REDEVELOPMENT AUTHORITY, a Joint
   Powers Authority; COMMUNITY               | Judge:      Hon. Charles R. Breyer
20 IMPROVEMENT COMMISSION OF THE
   CITY OF ALAMEDA, a public body corporate  | Supporting Documents
21 and politic; ANN MARIE GALLANT, an        | Declaration of David B. Newdorf
   individual; and DOES 1 through 10, inclusive,  |   Attachments:
22                       Defendants.         |       Ex. A – David Brandt Deposition
23                                           |       Ex. B – JoAnne Dunec Deposition
                                             |       Ex. C – Amy Freilich Deposition
24                                           |       Ex. D – Leslie Little Deposition
                                             |       Ex. E – Bill Myers Deposition
25                                           |       Ex. F – Debbie Potter Deposition
                                             |       Exs. 1-24: Selected Deposition Exhibits
26
27 AND RELATED COUNTERCLAIM
28

**NEWDORF LEGAL**
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................... ii

NOTICE OF MOTION .............................................................................................. 1

INTRODUCTION ..................................................................................................... 1

SUMMARY OF ARGUMENT .................................................................................. 2

PROCEDURAL POSTURE ...................................................................................... 2

STATEMENT OF UNDISPUTED MATERIAL FACTS .......................................... 6

ARGUMENT ........................................................................................................... 11

I.      THE ENA IS NOT "REASONABLY SUSCEPTIBLE" TO THE INTERPRETATION
        THAT SUNCAL MAY RECOVER RELIANCE DAMAGES. ......................... 11

        A.      The Parol Evidence Rule Does Not Permit Extrinsic Evidence To Show Any
                Proposed Meaning to Which a Contract Is Not "Reasonably Susceptible." ........... 11

        B.      Only "Damages or Monetary Relief" That Are Expressly "Set Forth" Are
                Permitted, and This Term Is Not Reasonably Susceptible to the Interpretation that
                Reliance Damages May Be Recovered. ................................................................ 12

        C.      The "Contract Claim" Permitted Under Section 7.4 Does Not Allow for the
                Damages Claimed by SunCal. ............................................................................. 14

II.     DRAFT VERSIONS OF THE ENA CONFIRM THE AGREEMENT CONTAINED IN
        THE FINAL CONTRACT ........................................................................................ 17

        A.      Drafting History In This Case Shows the Parties' Understanding and Agreement
                that Out-of-Pocket Costs and Reliance Damages Could Not Be Recovered. .......... 17

        B.      The Court May Construe the Contract As a Matter of Law Based on the Drafting
                History and the Final Language of the ENA. ........................................................ 21

III.    DEPOSITION TESTIMONY CONFIRMS THAT SUNCAL UNDERSTOOD AND
        ACQUIESCED TO THE WAIVER OF OUT-OF-POCKET COSTS. ......................... 22

CONCLUSION ......................................................................................................... 25

**Newdorf Legal**
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

# TABLE OF AUTHORITIES

**Cases**

*Abers v. Rounsavell*,
    189 Cal. App. 4th 348 (2010)..........................................................................12

*Abifadel v. Cigna Ins. Co.*,
    8 Cal. App. 4th 145 (1992)............................................................................11

*City of El Cajon v. El Cajon Police Officers' Assn.*,
    49 Cal.App.4th 64 (1996)...........................................................................3, 22

*Dore v. Arnold Worldwide, Inc.*,
    39 Cal. 4th 384 (2006) ..............................................................................4, 12

*Okun v. Morton*,
    203 Cal.App.3d 805 (1988).............................................................................23

*Palma v. Leslie*,
    6 Cal. App. 2d 702 (1935)...............................................................................22

*Parsons v. Bristol Development Co.*,
    62 Cal.2d 861 (1965) ......................................................................................23

*Producers Dairy Delivery Co. v. Sentry Ins. Co.*,
    41 Cal.3d 903 (1986) ......................................................................................11

*Southern Cal. Edison Co. v. Superior Court*,
    37 Cal.App.4th 839 (1995).............................................................................12

*Southern Pacific Land Co. v. Westlake Farms, Inc.*
    188 Cal.App.3d 807 (1987)..............................................................................4

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*,
    660 F. Supp. 2d 1163 (C.D. Cal. 2009)..........................................................22

*Winet v. Price*,
    4 Cal. App. 4th 1159 (1999)...........................................................................23

**Statutes**

California Civil Code
    Section 1651....................................................................................................18

Federal Rule of Civil Procedure
    Section 56..........................................................................................................1

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on May 4, 2012, in Courtroom 6 on the 17th floor of the U.S. Courthouse, 450 Golden Gate Ave., San Francisco, California, at 10:00 a.m., Defendants/Counterclaimants City of Alameda, the Alameda Reuse and Redevelopment Authority, and the Community Improvement Commission of the City of Alameda, will and hereby do move for partial summary judgment on SCC Alameda Point LLC's claims for out-of-pocket costs and reliance damages. This motion is made pursuant to Fed. R. Civ. Proc. 56 and is based on the following points and authorities, the declarations and exhibits submitted herewith, the pleadings on file, any brief in reply and such argument as may be made at the hearing.

**INTRODUCTION**

This lawsuit arises from failed negotiations between the parties for the redevelopment of the former Alameda Naval Air Station. On this motion, the City asks the Court to interpret and enforce the remedies provision of the parties' contract. Section 7.4 of the agreement waives the recovery of "all damages and monetary relief" except as expressly "set forth" in the agreement. Despite the requirement that any damages or monetary remedy must be "set forth" in the contract, SCC Alameda Point LLC ("SunCal") argues that it may recover out-of-pocket costs or reliance damages by implication or negative inference because there is no express waiver of reliance damages.

In May 2007, the City of Alameda selected plaintiff/counter-defendant SCC Alameda Point LLC ("SunCal") as the master developer for a large mixed-use residential and commercial development at the former Navy base. Following this selection, the parties negotiated for two months before entering into an Exclusive Negotiation Agreement ("ENA") on July 18, 2007. The parties agreed to negotiate exclusively and in good faith during the Exclusive Negotiation Period over the terms of the Alameda Point redevelopment project. In February 2010, Alameda residents voted down the SunCal project by an 85-to-15 percent margin. SunCal resubmitted substantially the same development plan to the City Council for approval of land-use entitlements. The City

**NEWDORF LEGAL**
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

Council voted 4-0 on July 20, 2010 to deny SunCal's entitlement application, ending three years of negotiations.

**SUMMARY OF ARGUMENT**

The parties agreed to strictly limit the damages or other monetary relief available upon termination of the ENA. Section 7.4 states that neither party "shall be entitled to damages or monetary relief *other than as set forth* in this Section 7.4" (emphasis added).[1] The only damages or monetary relief provided for in section 7.4 are a "contract Claim" for recovery (i) by SunCal of excess amounts deposited to pay the City's "Pre-Development Costs" or (ii) by the City of amounts due from SunCal for Pre-Development Costs. "Pre-Development Costs" is a defined term referring to costs incurred by Alameda for consultants, counsel and staff time related to negotiation of the Alameda Point project. (ENA § 6.2.) Under section 6 of the ENA, SunCal reimbursed these expenses through deposits into a Negotiating Cost Account. (ENA § 6.3.) Under Section 7.4, upon termination of the ENA, SunCal could make a "contract Claim" to recover any surplus amounts deposited in this account (i.e. in excess of the Pre-Development Costs actually incurred by Alameda) or Alameda could recover the amount of any deficit in the account. This remedy allows recovery of a narrow category of out-of-pocket costs as set forth in the second sentence of Section 7.4.

Section 7.4 thus precludes recovery of any damages or monetary relief other than as "set forth" in that section, and the only damages or monetary relief set forth in that section is the

---

[1]   In its entirety, section 7.4 provides:

> 7.4   <u>Remedies</u>.   In any action at law or equity or other legal or administrative proceeding to remedy a Developer Event of Default or an Alameda Event of Default or otherwise enforce this Agreement, or that otherwise may arise out of this Agreement neither Alameda nor Developer shall be entitled to damages or monetary relief other than as set forth in this <u>Section 7.4</u>.  Permitted remedies shall include (i) mandatory or injunctive relief, (ii) writ of mandate, (iii) termination of this Agreement, or (iv) a contract Claim (as defined <u>Section 15.5</u> below) to recover money due to Alameda or Developer as a payment of Pre-Development Costs or reimbursement of excess Pre-Development Cost deposits under <u>Section 6</u> of this Agreement; provided, however, neither Alameda nor Developer shall be liable, regardless of whether the Claim is based in contract or tort, for any special, indirect or consequential damages.

**NEWDORF LEGAL**
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

narrow category of "Pre-Development Costs" described above. SunCal, however, argues that reliance damages[2] may be recovered because they are *not* set forth in Section 7.4. SunCal points to the final clause of Section 7.4, which states that neither party may recover any "special, indirect or consequential damages," and maintains that the absence of any reference to reliance damages means these damages are recoverable This entirely ignores the first sentence of Section 7.4, which states that only damages or monetary relief "set forth" in Section 7.4 may be recovered. It also ignores the logical relationship between the second and third sentence of Section 7.4. The "Pre-Development Costs" recoverable under a "contract Claim" in the second sentence of section 7.4 are a type of reliance damages. The language in the second sentence of Section 7.4 setting out a narrow subset of reliance damages that could be recovered reveals that the parties did not intend to make *all* reliance damages recoverable. Moreover, the absence of a reference to reliance damages in the final clause is consistent with the balance of Section 7.4 – the inclusion of reliance damages as a prohibited remedy in the final clause would have contradicted the immediate prior sentence that permitted recovery of a subset of reliance damages.

The Court must construe the contract in a way that harmonizes its provisions and avoids rendering any part of the contract surplusage. *City of El Cajon v. El Cajon Police Officers' Assn.*, 49 Cal.App.4th 64, 71 (1996). SunCal's interpretation both fails to harmonize all of Section 7.4's provisions and renders part of it surplusage. SunCal infers the recoverability of a category of damages by the absence of any reference to it. This irreconcilably conflicts with the first sentence of Section 7.4 – which states that only the damages or monetary relief "set forth" in that section is recoverable. There is no way to harmonize SunCal's interpretation with the first sentence of Section 7.4. SunCal's interpretation is also inconsistent with the second sentence of Section 7.4, which expressly allows recovery of a subset of reliance damages. If reliance damages were recoverable without limitation (because they were not expressly excluded in the final sentence of Section 7.4), it would have been surplusage to carefully define a "contract Claim" for money due related to any surplus or deficit in the account to fund Alameda's Pre-Development Costs.

---

[2] SunCal has at various times characterized these as either "reliance damages" or "out-of-pocket costs," which here amount to the same thing.

Adoption of a construction that requires a portion of a clause to be treated as meaningless or surplusage, when another interpretation serves to harmonize all parts of the clause, would conflict with basic contract interpretation principles. *Southern Pacific Land Co. v. Westlake Farms, Inc.*, 188 Cal.App.3d 807, 821 (1987).

SunCal's argument founders because the inference it relies on is in direct and irreconcilable conflict with both the structure and the content of Section 7.4. That section states that all damages not expressly permitted are prohibited, and SunCal argues that reliance damages are permitted because they are not expressly prohibited. Because the language "no damages or monetary relief other than as set forth in this Section" is not reasonably susceptible to the interpretation urged by SunCal, extrinsic evidence is not relevant or admissible to interpret the contract.  *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 393 (2006).

To the extent the Court reviews and considers the extrinsic evidence, it is fully consistent with the plain language of Section 7.4 and inconsistent with SunCal's interpretation. The drafting history shows that initially, the "Remedies" provision did not contain the first sentence stating that "neither Alameda nor Developer shall be entitled to damages or monetary relief other than as set forth in this <u>Section 7.4</u>." It only stated that neither party could recover "special, indirect or consequential damages." SunCal told Alameda at the first negotiation session that it wanted the ability to recover its out-of-pocket costs if Alameda breached the ENA. The City's lead negotiator responded strongly that Alameda would not agree. After this meeting, the parties exchanged dozens of drafts of the ENA. There were only two substantive changes in the language of the initial draft related to damages or recovery of costs that were later incorporated into the final agreement:

1. SunCal added a draft provision entitled "Termination by Alameda Default," which stated that in the event of Alameda default, SunCal could recover its $1 million deposit. Alameda agreed.

2. Toward the end of negotiations, the "Remedies" provision was revised to its final form by adding a new first sentence that stated neither party could recover "damages or monetary relief except as set forth in this Section."

**NEWDORF LEGAL**
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

4

SunCal pressed for inclusion of a provision entitled "Break-Up Fee," which would have allowed SunCal to recover certain of its costs if, after the ENA ended, Alameda entered negotiations with another developer.  Alameda did not agree, and this provision was not included in the final agreement. Alameda acceded to SunCal's proposal that the developer could recover the $1 million deposit if the City breached the ENA, but told SunCal that it unequivocally rejected the recovery of the developer's out-of-pocket costs, whether as damages or a "Break-Up Fee." To remove all doubt as to the recoverability of reliance damages, the parties broadened the damages waiver by extending it to all categories of damages or monetary relief unless the right to recovery was set forth in section 7.4. SunCal signed the agreement with that language in it.

The only fair inference from this drafting history and parol evidence is that SunCal understood and acquiesced to the City's stated position that the City's liability for breach would be limited to returning the $1 million deposit. Nothing in the evidence remotely supports the interpretation SunCal now seeks to give the language of Section 7.4.

PROCEDURAL POSTURE

In this action, each party has claims against the other for breach of the Exclusive Negotiation Agreement. In August 2010, SunCal filed this lawsuit, alleging that the City had breached the ENA and seeking recovery of reliance damages of $17 million and consequential damages (lost profits) in excess of $100 million. On February 23, 2012, Alameda filed its counterclaim alleging that SunCal breached the ENA based on the developer's own failures to negotiate in good faith. The Court granted the City's motion to dismiss the claim for consequential damages on the ground that California law does not allow recovery of lost profits for breach of an agreement to negotiate. The Court previously denied the City's motion to dismiss the claim for reliance damages and out-of-pocket costs based on SunCal's argument that the ENA was ambiguous and that extrinsic evidence would demonstrate the parties' intent to allow recovery of reliance damages. The Court ordered the parties to conduct limited discovery "only for the purpose of demonstrating their intent as to whether the damage waiver clause would preclude recovery of reliance damages."  (10/24/2011 Discovery Order, doc. 93 at 4.) The parties engaged

**NEWDORF LEGAL**
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

in written discovery and took twelve depositions. Discovery regarding interpretation of the damages provision has now been completed.

STATEMENT OF UNDISPUTED MATERIAL FACTS

### The ENA Was Heavily Negotiated

The Exclusive Negotiation Agreement ("ENA") was heavily negotiated by both sides. The initial draft was produced by Alameda outside counsel JoAnne Dunec based on a "form" used in another transaction. (Dunec Depo. 38:11-21; Potter Depo. 40:18-21.) The document went through "dozens" of drafts over two months before it was signed by both sides. (Brandt Depo. 43:24-44:1.) This included the initial draft circulated on May 15, 2007 (Ex. 5[3]) and revisions circulated May 22, 2007 (Ex. 22), June 4, 2007 (Ex. 8); June11, 2007 (Ex 6), June 16, 2007 (Ex. 16), June 21, 2007 (Ex. 21), July 3, 2007 (Ex. 9.) and July 10, 2007 (Ex. 24). Both sides made changes in the draft language, with the drafts going back and forth between them. (Brandt Depo. 38:12-18; Freilich Depo. 57:11-13, Potter Depo. 8:19-21.) In addition, the parties met on a regular basis (weekly at times) to discuss changes in the draft versions of the ENA. (Brandt Depo. 26:5-14; Potter Depo. 10:25-11:12.) Each side was represented by both in-house and outside counsel. (Freilich Depo. 26:9-12; Myers Depo. 6:1-6; Potter Depo. 10:6-8.) The negotiations took approximately two months. (Brandt Depo. 25:14-17; Freilich Depo. 15:8-9.) The final ENA was signed and dated July 18, 2007 after being approved by the Alameda City Council. (Ex. 1.)

### Negotiations Concerning Recovery of Out-of-Pocket Costs

The initial May 15, 2007 draft of the ENA stated that the $1 million Initial Payment would be refunded to SunCal "if and only if" the Project Site were conveyed to the Developer. (Ex. 5, § 5.1.) It also defined "Pre-Development Costs" as the costs that Alameda incurred for its consultants and staff time, which SunCal was responsible for reimbursing through a "Negotiating Costs Account." (Ex. 5, §§ 5.2, 5.3.) In this draft, as in the final ENA, "Pre-Development Costs" did not include SunCal's expenditures for the developer's own consultants. The "Remedies" provision contained two sentences. It stated that the "sole and unique remedies" were injunctive

---

[3] Citation to "Ex." refers to the deposition exhibits, which are attached to the Declaration of David B. Newdorf and are marked with the same exhibit number used in the depositions.

6

NEWDORF LEGAL
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

**NEWDORF LEGAL**
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

relief, writ of mandate and a "contract Claim" for any balance due in the Negotiating Cost

Account. (Ex.5, § 7.5.) Neither side could recover "special, indirect or consequential damages."

The original draft did not expressly waive any other types of damages.

     Assistant City Manager David Brandt, the City's lead negotiator, testified that the

"contract Claim" for Pre-Development Costs permitted under the ENA was a "true-up."

> Q. And could you explain what money would be due under the ENA that relates to predevelopment costs?
>
> [Objection omitted.]
>
> THE WITNESS:  The way the document was structured, SunCal was, again, supposed to obligate to pay deposits -- and, again, I can't remember if these were monthly or quarterly -- to cover the city's costs, both staff and consultant.  It was anticipated that at a termination date there could either be a balance or a deficit in that account.  And the parties acknowledged that either one of the parties could recover, depending whether there was a deficit or a surplus at termination. So it was a true-up, essentially, the way we looked at it. (Brandt Depo. 52:15-53:3.)
>
> * * *
>
> Q. If you look at the fourth line from the bottom -- start with the fifth, subsection 4.  This is one of the permitted remedies in here.  "A contract claim (as defined Section 15.5 below) to recover money due to Alameda or Developer as a payment of Pre-Development Costs or reimbursement of excess Pre-Development Cost deposits under Section 6 of this Agreement."
>
> Now, excess predevelopment costs under section 6, this agreement, does that refer to the account you were talking about?
>
> A. Yes.
>
> Q. Predevelopment costs before that, does that refer to the city's costs and SunCal's costs of developing the project?
>
> A. No.  It refers to the same account, the predevelopment account. Essentially the concept was that SunCal would provide these deposits to the city to cover its costs.  And at time of termination there could either be a balance or a deficit.  And we wanted to make it explicit that either party could try to recover those. (Brandt Depo. 80:22-81:16.)

     At the first negotiating session, held two days after the circulation of the initial draft, the

parties discussed the recovery of the $1 million deposit and SunCal's out-of-pocket costs. The

notes taken by the JoAnne Dunec (Alameda's outside counsel) stated in part:

> § 7.5 – Remedies
>
>     – costs incurred up until termination

7

– $1M

§ 7.2 – If Alameda defaults – recovery of costs by SunCal

DB [David Brandt] – won't agree (Ex. 17.)

Brandt testified as to the early discussion of the subject of out-of-pocket cost recovery by SunCal:

> Q. And then under 7.2, which is default to Alameda in the draft, there's a note [in Exhibit 17], "If Alameda defaults - recovery of costs by SunCal."
>
> Do you recall who said that at the meeting?
>
> A. That was either going to be Amy [Freilich of SunCal] or Charlie [Thornton, outside counsel for SunCal].
>
> Q. They were referring to recovery of costs other than the true-up?
>
> A. Yes.  Their out-of-pocket costs which they had talked about being in the tens of millions of dollars.
>
> Q. The next line is, "DB - won't agree."
>
> Did you say something along those lines?
>
> A. Yes.  I refused to agree to that. (Brandt Depo. 54:11-22.)

The parties exchanged numerous additional drafts after the first draft. The City of Alameda agreed to a term proposed by SunCal in a May 22, 2007 draft that SunCal would be entitled to a return of the $1 million deposit if Alameda defaulted. (Ex. 22, § 7.2; Brandt Depo. 53:20-54:5.)

In the June 4, 2007 draft, SunCal for the first time included draft contractual language that would entitle the developer to recover some of its out-of-pocket costs. (Ex.8, § 6.4). This provision was referred to as a "Break-Up Fee." The proposed language read as follows:

> <u>Break-Up Fee.</u>  In the event that prior to two (2) years after the expiration of the Term, as it may be extended as provided herein, Alameda . . . solicits, markets or negotiates with any other person or entity regarding the development or control of the Project Site (or any portion thereof) or solicits or entertains bids or proposals for the disposition of the Project Site, then SunCal shall be entitled, at its election, to (i) the return of the Initial Payment plus any interest accrued thereto, and (ii) a break-up fee in an amount equal to one hundred ten percent (110%) of the sum of the Pre-development Costs and any payment made by SunCal to Alameda pursuant to Section 6.3. (Ex. 8, § 6.4)

Alameda deleted this language in the responsive draft circulated on June 11, 2007. (Ex. 16.) David Brandt testified about the City's opposition to the Break-Up Fee:

> Q. Under part III (of Ex. 14), "Other Issues," there's a section d, "Break-Up Fee Deletion."

NEWDORF LEGAL
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

**NEWDORF LEGAL**
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

A. Yes.

Q. Do you have an understanding of what that refers to?

A. Yes.  It refers to the city's position that we wanted that provision deleted from the draft.

Q. There was pushback from SunCal on that?

A. Yes.

Q. Do you recall how that was resolved?

A. They finally agreed to delete it. (Brandt 38:17-39:2)

MR. NEWDORF:  Q.  So how would you characterize the importance of the city's position on deletion of the break-up fee?

[Objection omitted]

THE WITNESS:  It was of critical importance. (Brandt Depo. 43:1-5)

After the Break-Up Fee was removed, as Mr. Brandt testified, neither party added draft contract language referring to the recovery of SunCal's out-of-pocket costs.

Q. Do you ever recall SunCal proposing a clause where it could -- saying we get back our predevelopment costs in the event of breach?

A. I don't think they actually drafted something. They proposed it at the first meeting.

Q. But you don't recall ever seeing that request in a draft?

A. No. (Brandt Depo. 86:3-10.)

On July 3, 2007, two weeks before the agreement was finalized and executed, SunCal circulated a draft that included revisions of the "Remedies" provision. This was the first substantive changes related to the recoverability of damages since the initial form draft. The changes (adopted in substance in the final version of the agreement) are shown in red-line below:

> 7.4     ~~7.5~~ Remedies.  In any action at law or equity or other legal or administrative proceeding to remedy ~~an~~ <u>a Developer Event of Default or an Alameda</u> Event of Default ~~of this Agreement~~ or otherwise enforce this Agreement, or that otherwise may arise out of this Agreement~~, the sole and unique remedies shall consist of~~ <u>neither Alameda nor Developer shall be entitled to damages or monetary relief other than as set forth in this Section</u>. <u>Permitted remedies shall include</u> (i) mandatory or injunctive relief, (ii) writ of mandate, ~~or (iii)~~<u>(iii)</u> termination of this Agreement <u>or (iv)</u> a contract Claim (as defined Section 15.5 below) to recover money due to Alameda or Developer as a payment of Pre-development Costs or reimbursement of excess Pre-development Cost deposits under Section 6 of this Agreement~~.~~ ~~Neither~~<u>; provided, however that</u> neither Alameda nor Developer shall be liable, regardless of whether the Claim is based in contract or tort, for any special, indirect or consequential damages. (Ex. 9.)

9

This revision added a new first sentence stating that "neither Alameda nor Developer shall be entitled to damages or monetary relief other than as set forth in this Section." Brandt testified that he told SunCal that the revised "Remedies" language more strongly expressed the City's position that SunCal could not recover its out-of-pocket costs.

Q. What was the purpose of these changes (shown in Exhibit 9)?

A. I wanted to be absolutely clear that the section meant what we intended it to mean, which was, as I said earlier, that in terms of remedies the only remedies were specific performance or injunction with the exception of the recovery of the balance of the predevelopment cost. I wanted to make sure that that was referred to as the defined predevelopment cost account.

(Brandt 63:18-25.)

Q. Did you express to SunCal either in a phone conference or in a joint face-to-face session that the provisions proposed in the remedies section were to more strongly support the previously expressed position of the city that their [sic] would be a waiver of damages and that the city's financial risk was limited to potentially returning the $1 million initial payment and any remaining funds in the predevelopment cost account?

A. Yes.

[Objection omitted.]

THE WITNESS: I expressed those issues directly to SunCal, particularly to Amy Freilich, repeatedly. (Brandt Depo. 64:15-65:2.)

* * *

Q. At that point SunCal said we just don't agree on this clause, the parties weren't on the same page with respect to whether SunCal could get its costs back in the event of an Alameda default, right?

[Objection omitted.]

THE WITNESS: No. I believe they conceded relatively quickly. We told them we would walk away from the discussions if they didn't drop that position.

MR. MILLER: Q. Who at SunCal conceded?

A. Well, it never showed up in a draft, so I think essentially it was a group concession. (Brandt Depo. 67:9-19.)

In discussing the City's potential monetary liability arising from the ENA, the City's negotiators made clear to SunCal that the return of the $1 million deposit was SunCal's recourse in the event of default. Leslie Little, one of the members of the City's negotiating team, testified:

Q.   And you recall SunCal not seeing eye to eye with the City and saying we want to be able to recover our costs, correct?

NEWDORF LEGAL
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

NEWDORF LEGAL
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

A.   I recall SunCal acknowledging the City's position more than once.  I recall SunCal asking for an exception to that more than once. (Little Depo. 29:19-24.)

Q.   And I understand your position and your belief as far as what the ENA means, but do you recall any specific discussion with SunCal where they agreed on the issue?

A.   I believe I do remember discussions where they agreed to those terms, that's correct.

Q.   And who from SunCal?

A.   I would say it was specifically Amy Freilich and Pat Keliher.

Q.   And what did they say about the issue?

A.   That they accepted those terms from us.

Q.   And when you say "those terms," which terms are you referring to?

A.   The limitations on their ability to recover pre-development costs most specifically. (Little Depo. 32:12-33:5.)

## ARGUMENT

**I.   THE ENA IS NOT "REASONABLY SUSCEPTIBLE" TO THE INTERPRETATION THAT SUNCAL MAY RECOVER RELIANCE DAMAGES.**

### A.   The Parol Evidence Rule Does Not Permit Extrinsic Evidence to Show Any Proposed Meaning to Which a Contract Is Not "Reasonably Susceptible."

Whether language in a contract is ambiguous is a question of law to be determined by the court.  *Producers Dairy Delivery Co. v. Sentry Ins. Co.,* 41 Cal.3d 903, 904 (1986). Interpretation of an unambiguous contract is also a question of law. *Abifadel v. Cigna Ins. Co.,* 8 Cal. App. 4th 145, 159 (1992) ("The interpretation of a contract is a question of law when the contract terms are unambiguous.").

"The threshold issue of whether to admit the extrinsic evidence—that is, whether the contract is reasonably susceptible to the interpretation urged—is a question of law . . . ." *Abers v. Rounsavell*, 189 Cal. App. 4th 348, 357 (2010). "[T]he first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over." *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 393 (2006) (quoting *Southern Cal. Edison Co. v. Superior Court,* 37 Cal.App.4th 839, 847 (1995)).

**B.      Only "Damages or Monetary Relief" That Are Expressly "Set Forth" Are Permitted, and This Term Is Not Reasonably Susceptible to the Interpretation that Reliance Damages May Be Recovered.**

The language of the ENA is not reasonably susceptible to the interpretation urged by SunCal that it may recover its out-of-pocket costs or reliance damages. A careful parsing of the "Remedies" provision of the ENA shows the intent of the parties. The first sentence of Section 7.4 states the general agreement that "damages or monetary relief" are not available except in prescribed circumstances:

> 7.4      <u>Remedies</u>.  In any action at law or equity or other legal or administrative proceeding to remedy a Developer Event of Default or an Alameda Event of Default or otherwise enforce this Agreement, or that otherwise may arise out of this Agreement ***neither Alameda nor Developer shall be entitled to damages or monetary relief other than as set forth in this <u>Section 7.4</u>***.

Neither party can get "damages or monetary relief" unless Section 7.4 specifically "sets forth" the circumstances in which "damages or monetary relief" are available under the ENA. Unless affirmatively "set forth" in Section 7.4, "damages or monetary relief" are not available as a remedy.  "Damages or monetary relief" is broad language and certainly includes out-of-pocket costs and reliance damages.

In the second sentence, section 7.4 sets out four "permitted remedies," including one claim for monetary relief, "a contract Claim." The second sentence reads as follows:

> Permitted remedies shall include (i) mandatory or injunctive relief, (ii) writ of mandate, (iii) termination of this Agreement, or (iv) a contract Claim (as defined in Section 15.5 below ) to recover money due to Alameda or Developer as a payment of Pre-Development Costs or reimbursement of excess Pre-Development Cost deposits under Section 6 of this Agreement;

As shown below, the "contract Claim" referenced in Section 7.4 does not encompass SunCal's claim for out-of-pocket costs. As made clear by the reference to Section 6, this remedy relates to the "Alameda Cost Recovery/Reimbursement" scheme created under the ENA. The permitted "contract Claim" refers to a narrow category of costs – whatever positive or negative balance remains in the Negotiating Cost Account after termination of the ENA.

The final clause of Section 7.4 qualifies and refers back to the "permitted" remedies specified in the second sentence.  The last clause of Section 7.4 states:

**Newdorf Legal**
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

**NEWDORF LEGAL**
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

1
2

> provided, however, neither Alameda nor Developer shall be liable,
> regardless of whether the Claim is based in contract or tort, for any special,
> indirect or consequential damages.

3   This final clause makes clear that the monetary relief specifically permitted in the second sentence

4   of Section 7.4 – the "contract Claim" related to deposits into the Negotiating Cost Account – does

5   not permit recovery of "any special, indirect or consequential damages." For example, the City

6   could recover the underpaid amounts for its Pre-Development Costs but it could not recover a late

7   fee charged by a consultant who was not timely paid because of a deficit in the Negotiating Costs

8   Account.

9          Read in the context of the entire paragraph, the final clause is not surplusage, meaningless

10   or redundant. The second sentence allowed a specific remedy in the form of a "contract Claim" for

11   one narrow category of out-of-pocket costs. The final clause made it clear that the "contract

12   Claim" could not include special, indirect or consequential damages – amounts that would

13   otherwise be recoverable under contract law. For this same reason, since the parties had created an

14   express remedy for a category of out-of-pocket costs in the immediately preceding sentence, it

15   would have been contradictory to add "reliance damages" or "out-of-pocket costs" to the list of

16   prohibited damages in the final clause.

17          Taken as a whole, Section 7.4 begins with a statement of the overall agreement of the

18   parties that *no* damages or monetary relief of any kind are allowed except as affirmatively set forth

19   in that section. Next, Section 7.4 lists certain permitted remedies, including one remedy that

20   affirmatively allows recovery of a narrow category of out-of-pocket costs: amounts deposited by

21   SunCal that exceed Alameda's Pre-Development Costs. Finally, Section 7.4 states that the

22   recovery of overpaid or underpaid Pre-Development Costs would be limited to the amount of

23   those costs, and would not include special, indirect or consequential damages.

24          SunCal seizes on the absence of any express reference to out-of-pocket costs in the final

25   clause of Section 7.4 as evidence of the intent to allow such relief. In other words, it asserts that

26   the parties intended to allow such damages by negative inference or implication. But under the

27   first sentence, any permitted damages must be "set forth" in Section 7.4. There is no room for

28   implied monetary relief.

Graphically, Section 7.4 is structured as shown in the following figure:

General rule excluding damages/monetary relief



Exception to rule of exclusion



Qualification to exception

Remedies.  In any action at law or equity or other legal or administrative proceeding to remedy a Developer Event of Default or an Alameda Event of Default or otherwise enforce this Agreement, or that otherwise may arise out of this Agreement, *neither Alameda nor Developer shall be entitled to damages or monetary relief other than as set forth in this Section 7.4*.

Permitted remedies shall include (i) mandatory or injunctive relief, (ii) writ of mandate, (iii) termination of this Agreement, or (iv) a contract Claim (as defined in Section 15.5 below) to recover money due to Alameda or Developer as a payment of Pre-Development Costs or reimbursement of excess Pre-Development Cost deposits under Section 6 of this Agreement;

provided, however, neither Alameda nor Developer shall be liable, regardless of whether the Claim is based in contract or tort, for any special, indirect or consequential damages.

Section 7.4 is clear in intent, internally consistent and devoid of surplusage. SunCal's claim – that 7.4 *implicitly* allows recovery of reliance damages because the final clause expressly excludes certain damages but not reliance damages – ignores the structure of Section 7.4, muddies the intent, relies on an unreasonable inference and renders part of the section surplusage:

*Structure*: Section 7.4 must be interpreted in light of its structure, under which all damages or monetary relief not expressly included are excluded. The default is that damages not specified

NEWDORF LEGAL
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

**NEWDORF LEGAL**
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

are not recoverable. Under SunCal's interpretation, all damages not expressly excluded are included. This conflicts with the fundamental structure of the clause.

*Reasonableness of Inference*: The basis for SunCal's inference is that if the parties had intended to prohibit reliance damages, they would have included such damages in the category of prohibited damages in the last clause. This is unreasonable because including reliance damages in the category of prohibited damages would have eviscerated the immediately preceding clause *allowing* recovery of a subset of reliance damages – akin to agreeing that you can have an apple but no fruit.

*Surplusage*: SunCal's interpretation – under which the parties implicitly intended to permit recovery of reliance damages – would render the language expressly permitting recovery of certain Pre-Development Costs surplusage. The Pre-Development Costs described in that section are a type of reliance damages – out-of-pocket costs incurred in reliance on the contract. It is not reasonable to believe that the parties would have carefully specified a narrow subset of reliance damages as being recoverable if they had intended that all reliance damages would be recoverable.

### C.    The "Contract Claim" Permitted Under Section 7.4 Does Not Allow for the Damages Claimed by SunCal.

SunCal has argued that a "contract Claim" for "Pre-Development Costs" (the fourth permitted remedy under Section 7.4) allows the recovery of all of the Developer's out-of-pocket costs. To the contrary, the "Pre-Development Costs" that could be recovered under this "contract Claim" are only a small subset of SunCal's costs. Section 6 of the ENA (entitled "Alameda Cost Recovery/Reimbursement") defines "Pre-Development Costs" – wherever the term appeared in the contract – as follows:

> Developer shall reimburse Alameda for its pre-development costs, which shall consist of third-party consultant and legal costs and expenses and Alameda staff time . . . related to the negotiation and preparation of this Agreement and the Transaction Documents (the "**Pre-Development Work")** incurred from and after the Effective Date (the "**Pre-Development Costs")**[.] (ENA § 6.2).

The term is capitalized in Section 7.4, and therefore refers to the definition contained in Section 6. Under Section 6 of the ENA, SunCal funded Alameda's Pre-Development Costs by

**NEWDORF LEGAL**
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

making "Quarterly Deposits" into a "Negotiating Cost Account." (ENA §§ 6.3, 6.3.1) Alameda paid its expenses out of this account. "Upon termination of this Agreement any surplus funds in the Negotiating Cost Account . . . shall be returned to Developer. If there is a deficit noted in the Negotiating Cost Account Ledger . . . then such amount shall be due and payable by Developer." (ENA § 6.3.1.3)

For purposes of a "contract Claim," these are the only two instances in which money would be "due" under the ENA related to Alameda's "Pre-Development Costs." First, money would be due to Alameda if there were a deficit in the account. Second, money would be to SunCal if there were "excess Pre-Development Cost deposits."[4] Neither of these two permitted contract Claims allows SunCal to recover its out-of-pocket costs, reliance damages or lost profits in the event Alameda breached the ENA.

In no event would there be "money due" to the Developer for payment of all of its out-of-pocket costs. This was made clear in March 2008, when the parties in the First Amendment to the ENA created a separate account, the Developer Consultant Costs Account, also funded by quarterly deposits by SunCal. This money was to be used "solely for purposes of paying consultants and legal fees and costs of Developer's third-party consultants and attorneys." (1st Amendment to ENA § 6.4.1.1 [Ex. 3].) At that time, the parties also added a new Section 6.4.5, which stated in part: "Alameda shall have no obligation whatsoever to pay any Developer Consultant Costs, whether incurred prior to or after termination of this Agreement." (Ex. 3.)

The language chosen by the parties in Section 7.4 shows that the "contract Claim" cannot refer to an action for breach of contract to recover SunCal's out-of-pocket costs. The reference in Section 7.4 to "money due" means the allocation of monetary obligations under the ENA, not a damages remedy for breach. Nowhere does the ENA obligate Alameda to reimburse the Developer's out-of-pocket costs – with the narrow exception of returning funds left over (if any) in the Negotiating Cost Account after termination of the ENA.

If the parties had intended to permit the non-breaching party to recover any other monetary

---

[4] Alameda returned the entire remaining balance of $65,593.76 in the Negotiating Cost Account on December 29, 2010.

**NEWDORF LEGAL**
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

relief in the event of an alleged breach – such as SunCal's claims in the Third Amended Complaint – they would have said so in Section 7.4. This section – and the ENA as a whole – are not "reasonably susceptible" to the interpretation offered by SunCal. For that reason, no extrinsic evidence is relevant or admissible. The Court should therefore interpret the ENA as a matter of law.

## II.   DRAFT VERSIONS OF THE ENA CONFIRM THE AGREEMENT CONTAINED IN THE FINAL CONTRACT.

### A.   Drafting History In This Case Shows the Parties' Understanding and Agreement that Out-of-Pocket Costs and Reliance Damages Could Not Be Recovered.

If the Court were to consider extrinsic evidence, it should rely on the most objective evidence from the negotiations – the contemporaneously created draft versions of the ENA and notes of negotiating sessions. The parties revised and exchanged "dozens" of drafts during negotiations. These documents show that the parties intended to be bound by the waiver of damages, including out-of-pocket costs.

On May 15, 2007, Alameda sent SunCal an initial draft of the ENA that was based on a "form" used in another transaction. It contained a Remedies provision that stated:

> 7.5   <u>Remedies.</u> In any action at law or equity or other legal or administrative proceeding to remedy an event of default of this Agreement or otherwise enforce this Agreement, or that otherwise may arise out of this Agreement, the sole and unique remedies shall consist of (a) mandatory or injunctive relief, (b) writ of mandate, or (c) a contract Claim (as defined below) to recover money due to Alameda or Developer as a payment of Pre-development Costs or reimbursement of excess Pre-development Cost deposits under Section 5 of this Agreement. Neither Alameda nor Developer shall be liable, regardless of whether the Claim is based in contract or tort, for any special, indirect or consequential damages. (Ex. 5.)

The initial form ENA also provided that SunCal's $1 million deposit was nonrefundable unless "conveyance of the Project Site to Developer is completed." (Ex. 5, § 5.1.)

At their meeting on May 17, 2007, the parties discussed these and other sections of the ENA, as reflected in the handwritten notes of JoAnne Dunec, outside counsel for Alameda. (Ex. 17; Dunec Depo. 39:20-40:11, 40:19-41:9.) The meeting was attended by Amy Freilich (SunCal Vice President for Land Use & Entitlement), Bill Myers (SunCal Regional President), Charles

Thornton (SunCal outside counsel from Paul Hastings Janofsky & Walker LLP), Gordon Hart (another Paul Hastings attorney), Debbie Potter (Alameda's Base Reuse & Community Development Division Manager), David Brandt (an Alameda Assistant City Manager) and Ms. Dunec. (Ex. 17.)

Ms. Dunec wrote that one attendee said: "If Alameda defaults – recovery of costs by SunCal." According to Ms. Dunec's notes, Alameda's David Brandt, lead negotiator for the City, responded that he "won't agree." (Ex. 17.)

On May 22, 2007, SunCal's outside counsel at Paul Hastings circulated to the Alameda and SunCal negotiating teams a revised draft with changes to Alameda's initial "form" draft. (Ex. 22.) Among other changes, the SunCal revision added a new section entitled: "Termination by Alameda Default." This section provided that SunCal would be entitled to the return of its $1 million deposit if Alameda defaulted in addition to any money left in the Negotiating Cost Account (used to reimburse Alameda for its expenses). The revised draft made no mention – either in this new section or elsewhere – of the return of any other out-of-pocket costs or recovery of reliance damages. This new section stated in its entirety:

> 7.2    Termination by Alameda Default. In the event of a Event of Default by Alameda pursuant to section 8.2, the Developer may terminate this Agreement by delivery of written notice to Alameda which shall state the grounds for Developer's determination that such Event of Default exists. Alameda shall return to Developer any funds remaining in the Negotiating Costs Account after payment to Alameda pursuant to Section 6.2 and Section 6.3 except to the extent such funds have been committed for payment to Alameda. In the event of any termination of this Agreement pursuant to this Section 7.2, the Developer shall be entitled to a refund of the One Million Dollars ($1,000,000) paid to Alameda as described in Section 6.1. (Ex. 22)

With some revision, this new section – providing for the return of the $1 million deposit in the event of an Alameda default – remained in later drafts and was incorporated into the final ENA. In the same May 22, 2007 SunCal draft, the "Remedies" paragraph was renumbered (based on the addition of other sections) and the capitalization of the term "event of default" was changed to initial capitals ("Event of Default"). But no substantive change was made to the "Remedies" provision following SunCal's statement during the previous week's negotiating session that it

NEWDORF LEGAL
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

18

should be entitled to recover its costs if Alameda were to breach the agreement.

The ENA thereafter went through "dozens" of further drafts, including revisions circulated on June 4, 2007 (Ex. 8); June 11, 2007 (Ex 6), June 16, 2007 (Ex. 16) and June 21, 2007 (Ex. 21). In each of these drafts, the parties made numerous changes, but neither side made any substantive change to the "Remedies" provision until July 3, 2007. On that date, SunCal circulated a revised red-line version of the agreement. In this draft, just two weeks before the final ENA was signed, Section 7.4 took its nearly final form. The draft was changed as follows (the <u>double underlined</u> words were added and the words ~~struck through~~ were deleted):

> <u>7.4</u>    ~~7.5~~ <u>Remedies.</u>  In any action at law or equity or other legal or administrative proceeding to remedy ~~an~~ <u>a Developer Event of Default or an Alameda</u> Event of Default ~~of this Agreement~~ or otherwise enforce this Agreement, or that otherwise may arise out of this Agreement~~, the sole and unique remedies shall consist of~~ <u>neither Alameda nor Developer shall be entitled to damages or monetary relief other than as set forth in this Section</u>. <u>Permitted remedies shall include</u> (i) mandatory or injunctive relief, (ii) writ of mandate, ~~or (iii)~~<u>(iii) termination of this Agreement or (iv)</u> a contract Claim (as defined Section 15.5 below) to recover money due to Alameda or Developer as a payment of Pre-development Costs or reimbursement of excess Pre-development Cost deposits under Section 6 of this Agreement~~. Neither~~<u>; provided, however that</u> neither Alameda nor Developer shall be liable, regardless of whether the Claim is based in contract or tort, for any special, indirect or consequential damages. (Ex. 9.)

Except for minor word-smithing, this was the version of Section 7.4 as it appeared in the final agreement. The July 3, 2007 draft contained three substantive changes from the version contained in the original form ENA:

1. It added a new first sentence stating that "neither Alameda nor Developer shall be entitled to damages or monetary relief other than as set forth in this Section."

2. The phrase "sole and unique remedies" was replaced by the phrase "Permitted remedies shall include";

3. "termination of this Agreement" was added to the list of enumerated remedies, increasing the number of listed remedies from three to four.

The only draft language exchanged by the parties that specifically addressed SunCal's out-of-pocket costs was added by SunCal in a draft on June 4, 2007 (Exhibit 8) and deleted by

**NEWDORF LEGAL**
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

Alameda in a draft on June 11, 2007 (Exhibit 16.). The provision was described as a "Break Up Fee." It read as follows:

> Break-Up Fee.  In the event that prior to two (2) years after the expiration of the Term, as it may be extended as provided herein, Alameda . . . solicits, markets or negotiates with any other person or entity regarding the development or control of the Project Site (or any portion thereof) or solicits or entertains bids or proposals for the disposition of the Project Site, then SunCal shall be entitled, at its election, to (i) the return of the Initial Payment plus any interest accrued thereto, and (ii) a break-up fee in an amount equal to one hundred ten percent (110%) of the sum of the Pre-development Costs and any payment made by SunCal to Alameda pursuant to Section 6.3. (Ex. 8, § 6.4)

This language – the only proposed contract language addressing SunCal's recovery of out-of-pocket costs – was expressly rejected by Alameda and removed from next draft.  (Ex. 16.) SunCal's proposed "Break-Up Fee" did not appear in the final agreement. (Brandt Depo. 38:17-39:2.)

The drafting history shows that the parties started with a "form" ENA based on another transaction. (Dunec Depo. 38:11-21). At the first joint meeting after the draft was circulated, the parties presented their positions as to the recovery of out-of-pocket costs. SunCal stated its view that it should be entitled to recover its out-of-pocket costs if Alameda breached the agreement. David Brandt, the City's lead negotiator, said he wouldn't agree. (Ex. 17.) The subsequent drafts and the final ENA show that the City compromised by agreeing to the return of the $1 million deposit if the City breached the ENA. The only draft provision directly addressing SunCal's ability to recover its out-of-pocket costs – the Break-Up Fee – was expressly rejected. The Break-Up Fee was not incorporated into the final agreement.

The language that neither side "shall be liable, regardless of whether the Claim is based in contract or tort, for any special, indirect or consequential damages" was in the first "form" draft of the ENA and remained unchanged until it was adopted in the final ENA. In addition, after numerous heavily negotiated revisions to the ENA, the parties added language stating that "neither party shall be entitled to damages or monetary relief except as set forth in this Section 7.4." This history shows the intent of the parties that the waiver of damages was broader than the original list of special, indirect and consequential damages.

NEWDORF LEGAL
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

**NEWDORF LEGAL**
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

Where part of a contract "is written or printed under the special directions of the parties, and with a special view to their intention, and the remainder is copied from a form originally prepared without special reference to the particular parties and the particular contract in question, . . . the parts which are purely original control those which are copied from a form. And if the two are absolutely repugnant, the latter must be so far disregarded." Cal. Civ. Code § 1651; *accord United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1175 (C.D. Cal. 2009) (Under California law, "[w]here an ambiguity arises in contracts that involve both standardized form and customized components, the customized components generally control.").

SunCal's argues that the parties meant to preclude only the specifically enumerated categories of damages. This interpretation must be rejected because it gives no effect to the language waiving any "damages or monetary relief" except as "set forth" in Section 7.4. The Court must construe the contract as a whole and avoid any interpretation that renders part of the contract surplusage. *City of El Cajon v. El Cajon Police Officers' Assn.*, 49 Cal.App.4th 64, 71 (1996).) "[T]here are contractual situations in which the court may resort to parol evidence, not to void or vitiate the apparent conflicting provisions of an instrument, but to harmonize them, and, when possible, give meaning and effect to each and all." *Palma v. Leslie*, 6 Cal. App. 2d 702, 707 (1935).

**B.     The Court May Construe the Contract As a Matter of Law Based on the Drafting History and the Final Language of the ENA.**

If the Court considers any extrinsic evidence, it should consider the draft versions of the ENA, the contents of which are undisputed and which are the most objective evidence of the intent of the parties. SunCal may dispute the inferences to be drawn from the drafting history, but that does not prevent the Court from deciding this motion as a matter of law. Where the parties dispute the inferences to be drawn from the extrinsic evidence but the evidentiary facts themselves are not in dispute, the Court reviews the agreement in the context of the extrinsic evidence and interprets the contract as a matter of law. *Okun v. Morton*, 203 Cal.App.3d 805, 816 (1988); *Parsons v. Bristol Development Co.*, 62 Cal.2d 861, 866 n. 2 (1965). There were "dozens" of written drafts of the ENA exchanged during negotiations. (Brandt Depo. 43:24-44:1) Seven of the drafts plus the

final contract were marked as deposition exhibits in this case and submitted with this motion. (*See* Exhibits 1, 5, 6, 9, 8, 16, 21, 24.) There is no dispute in the record that those drafts marked as exhibits were exchanged by the parties during the negotiations. Under these circumstances, evidentiary facts are not in dispute, and the Court may construe the final ENA in light of this parol evidence as a matter of law.

## III.   DEPOSITION TESTIMONY CONFIRMS THAT SUNCAL UNDERSTOOD AND ACQUIESCED TO THE WAIVER OF OUT-OF-POCKET COSTS.

Deposition testimony in this case shows that SunCal expressed its position to Alameda that it should be entitled to recover its out-of-pocket expenses. City negotiators never agreed, and the only draft contract language addressing recovery of out-of-pocket costs (the Break-Up Fee) was deleted before the ENA was finalized and executed. Ultimately, the parties added stronger waiver language to the "Remedies" provision – that neither side could recover any "damages or monetary relief" unless it was "set forth" in Section 7.4.

If the Court finds that the deposition testimony is relevant, the Court should exclude testimony that solely relates to one side's negotiating position, strategy or unilateral understanding of the meaning of terms. The belief of one side's negotiators as to the meaning of ENA terms is "not competent extrinsic evidence, because evidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language." *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n. 3 (1999). "It is the outward expression of the agreement, rather than a party's unexpressed intention, which the court will enforce." *Id.* at 1166.

David Brandt, the City's lead negotiator, testified:

> Q. Did you express to SunCal either in a phone conference or in a joint face-to-face session that the provisions proposed in the remedies section were to more strongly support the previously expressed position of the city that their [sic] would be a waiver of damages and that the city's financial risk was limited to potentially returning the $1 million initial payment and any remaining funds in the predevelopment cost account?
>
> A. Yes.
>
> [Objection omitted.]
>
> THE WITNESS:  I expressed those issues directly to SunCal, particularly to Amy Freilich, repeatedly. (Brandt Depo. 64:15-65:2.)

**NEWDORF LEGAL**
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

**NEWDORF LEGAL**
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234

Q. At that point SunCal said we just don't agree on this clause, the parties weren't on the same page with respect to whether SunCal could get its costs back in the event of an Alameda default, right?

[Objection omitted.]

THE WITNESS:  No.  I believe they conceded relatively quickly.  We told them we would walk away from the discussions if they didn't drop that position.

MR. MILLER:  Q.  Who at SunCal conceded?

A. Well, it never showed up in a draft, so I think essentially it was a group concession. (Brandt Depo. 67:9-19.)

SunCal's lead negotiator, Amy Freilich, testified that SunCal would have preferred express language allowing the recovery of out-of-pocket costs, but believed that it had wrestled from Alameda all the concessions that it could.  On the parties' discussion of reliance damages, Ms. Freilich testified:

Q.  What do you remember generally about the use of the phrase reliance damages in discussions in joint sessions?

A.  I think early on the City's view was that we were not entitled to any damages of any sort including reliance damages.  And I think that over time as this language evidenced we started to move to a place where we weren't specifically excluding that.  But we weren't speaking to it directly either.

I think our view would have been we would [have] liked to express it clearly.  I think their view would have been they didn't want to see it in the document.  We came to this compromised language ultimately.

Q.  And your understanding is that the compromise reached between the City and Alameda is that the phrase would remain that neither Alameda nor developer shall be liable for special indirect or consequential damages but there would be no specific reference to out-of-pocket costs or reliance damages, that was the compromise?

[Objection omitted.]

THE WITNESS:  That we would -- my understanding was that the language that ["]permitted remedies shall include["] meant this was not a specific list.  And the only things prohibited were special indirect or consequential damages. (Freilich 67:5-68:4.)

Q.  . . .  Is there anything in the joint sessions between Alameda and SunCal in which you base your understanding that this was compromised language that deliberately omitted discussion of out-of-pocket costs or reliance damages?

[Objection omitted].

23

THE WITNESS:  I -- you know, this was fundamentally [an] arm wrestle on a critical point I think between two parties that sort of became an agreement to be, you know --

[Objection omitted.]

THE WITNESS:  I was going to say that became an agreement to this language.  And to -- I think what I said earlier was that it became a -- I don't know what was going on in the mind of the City at this juncture. But I think from our standpoint we felt that we were going to be able to -- not to move the City any further but that this gave us the room to make an argument for reliance damages. And for other damages that might related to -- that might not specifically be written here. (Freilich Depo. 68:10-69:7.)

No witness for SunCal testified that the parties agreed during negotiations that SunCal could recover it's out of pocket costs. Bill Myers, the regional president for SunCal, testified:

Q.  Now, what is the last conversation that you recall having with anyone at the City in any forum about SunCal's interests in being able to recover its out-of-pocket costs?

A.  It was very early on.  We just kind of sat it on the shelf and worked through all the other documents, then put this [the July 3, 2007 changes in Section 7.4] in at the end.  So there was none, other than those at the beginning. (Bill Myers Depo. 40:7-14.)

Thus, SunCal hoped that the change from "sole and unique remedies" to "permitted remedies" would allow an "argument" to be made in the future that SunCal could recover its costs or reliance damages. SunCal's testimony is borne out by the drafting history, which shows that after the Break-Up Fee was deleted, SunCal made no attempt to reinsert any contract language that directly addressed out-of-pocket costs. (Brandt Depo. 86:3-10; Myers Depo. 40:7-14.)

In this case, the record shows that each side presented its positions and arguments to the other side in negotiating sessions. It is also undisputed that, following these joint discussions, the parties continued to exchange drafts of the document with numerous changes. The only changes relevant to out-of-pocket costs were: (1) the City's concession that SunCal would be entitled to the return of its $1 million deposit if Alameda breached; (2) SunCal's proposed Break-Up Fee, which was deleted; and (3) the addition in the final two weeks of the negotiations of a new first sentence of Section 7.4 stating that "neither Alameda nor Developer shall be entitled to damages or monetary relief other than as set forth in this Section 7.4."

**CONCLUSION**

For the foregoing reasons, the Court should grant this motion for partial summary judgment and hold that out-of-pocket costs and reliance damages cannot be recovered under the ENA.

Dated:  March 30, 2012

PERKINS COIE LLP
GEOFFREY L. ROBINSON
ALLEN H. MURPHY

NEWDORF LEGAL
DAVID B. NEWDORF

By:/s/ *David B. Newdorf*
DAVID B. NEWDORF
Attorneys for Defendants